MRS. MATILDA SONNEMAN v. WILLIAM TUSZYNSKI, *et ux.*

191 So. 18
Division B
Opinion Filed July 25, 1939
Rehearing Denied September 27, 1939

*Mabry, Reaves, Carlton & White,* for Appellant;
*J. Polk Ikard* and *O. P. Hilburn,* for Appellees.

CHAPMAN, J.—The record in this case shows that the plaintiff below, during the year 1924, was 65 years of age and was then engaged in operating a boarding house located in Brooklyn, New York, when the defendant below, William Tuszynski, obtained board and lodging with her. Plaintiff was a German by birth and came to this country in 1896, subsequently married, and two sons were born to the marriage, but died. She and her husband separated during the year 1902. She had no relatives and few friends in America. The defendant by birth was Polish and came to America in 1921, and was 27 years of age at the time he became a boarder and obtained lodging with the plaintiff.

The plaintiff, according to the record, was energetic and thrifty and had obtained employment as a domestic servant shortly after coming to America. She operated a boarding house and rooming place for several years prior to 1931, and defendant remained or made his home with her. Bonds of friendship sprang up between the two, and some of the witnesses referred to the relationship as "mother and son," when the defendant on numerous occasions expressed a desire or willingness to take care of the plaintiff during the remainder of her life.

The defendant, during the year 1929 or 1930, purchased some lots situated on Long Island and he desired to im- prove the same by erecting a cottage thereon where the two

could occupy the same and the plaintiff could give up or discontinue her boarding house and then devote her entire time as housekeeper for the defendant. The parties having agreed so to do, the boarding house was discontinued by the plaintiff, and the construction of the cottage begun. Plaintiff advanced money, so she testified, to complete the cottage, but this was denied by the defendant when on the witness stand. The property later was condemned in a legal proceeding and the State of New York paid therefor to the defendant the sum of $3,500.00 or $4,000.00, the money paid therefor being delivered to the defendant.

In January, 1932, the defendant, assisted by the plaintiff, bought a filling station at Bayshore, New York, and the price paid for the same was the sum of $1,000.00 when the defendant immediately undertook the operation of the same, which began during January, 1932, and ended in October, 1933. There were living quarters on the property where the plaintiff and defendant lived and assistants were hired incident to the operation of the station. The plaintiff kept house, cooked and laundered for the defendant, as well as the helpers employed at the station. The filling station under their management proved to be a profitable business, as it is shown that the defendant took therefrom from January, 1932, to October, 1933, between $4,000.00 and $5,000.00 as profits. He then sold the station for $3,500.00. The plaintiff, from time to time when necessary, advanced money to assist or help the defendant in supplying goods and merchandise in operating the business. The record here shows that the defendant received between $12,000.00 and $13,000.00 from the years 1929 to October, 1933, during the entire time the plaintiff kept house, cooked, laundered, and advanced money to the defendant when necessary or the business required it. She at no time demanded money or

compensation for her labor or services while with the defendant, according to her testimony, but when necessary or the business or circumstances required it, advanced money to the defendant, always relying upon their contract or agreement to the effect that the defendant would take care of her as long as she lived. After the sale of the filling station, the parties in the late Fall of 1933 moved to Fort Myers, Florida.

The defendant, in January, 1934, bought a tourist camp near Tampa and paid therefor the sum of $10,000.00. He took over the operation of same on February 1, 1934, and was assisted by the plaintiff in the care of guests at the camp, and she continued her usual work as cook, housekeeper and laundress for the defendant. The evidence shows when necessary she scrubbed and cleaned the cottages at the tourist camp, and planted shrubbery and flowers about the place, thereby adding to its beauty and attractiveness. The defendant met a young lady guest at the camp, and, following a short courtship, in October, 1934, married her. The defendant brought his wife to the camp to make her future home and immediately trouble arose between the plaintiff and the wife of the defendant, and he at once espoused the part of the wife as against the plaintiff, and the result thereof, after some delays, is the suit at bar. The plaintiff was forced by the conduct of the defendants to leave the camp at a time when she was 78 years of age, penniless, with no relatives or friends, and in need of the common necessities.

The conclusion is inescapable when reading the record that the plaintiff advanced money to the defendant from time to time for a long time, discharged duties as housekeeper and performed for the defendant other domestic services, with the expectation that the defendant would observe

and fully perform his agreement or contract to support and maintain her the remainder of her life, which he refuses to do and forced the plaintiff to leave the tourist camp.

The prayer of the bill asks for relief, viz.: (a) that the court decree the amount due from the defendant to the plaintiff and that a lien therefor be decreed against the lands and improvements described in the bill of complaint; (b) if an accounting cannot be decreed, then a decree be entered fixing an amount which the defendant would be required to pay monthly to the defendant for her support and necessities according to his ability to provide; (c) that the monthly amounts the court decrees defendant to pay plaintiff for her support and maintenance shall be a lien upon the lands and improvements. From an order dismissing the bill of complaint an appeal has been perfected to this Court.

In the case of Carlton v. Carlton, 78 Fla. 252, 83 So. 87, the facts were: The parties were husband and wife and had cohabited together for a number of years and during this period the wife not only contributed funds, but performed labor for a long time and in this manner assisted her husband in acquiring a home and property, and the acquisition of his fortune. The Court held that her contributions of money and her industry and labor over the years given to her husband gave her a special equity in the property which she aided in acquiring and preserving.

The rule, *supra,* was again enunciated in the case of Heath v. Heath, 103 Fla. 1071, 138 So. 796, when the following language was used:

"There is undoubtedly proof that the wife materially assisted the husband in the conduct of his business of operating a chain of stores and that she put into her husband's business a substantial amount of her own capital

in addition to what personal services she rendered. Whatever consequences the wife may be compelled under the law to suffer for her marital derelictions by the severence of the bonds of matrimony, she is not required to incur the forfeiture of any of her already vested equitable property rights which were acquired by her while the matrimonial barque was sailing on smoother seas. See Carlton v. Carlton, 78 Fla. 252, 83 So. Rep. 87; Taylor v. Taylor, 100 Fla. 1009, 130 Sou. Rep. 713."

We think there is abundant evidence in the record to support the finding that the plaintiff, prior to 1929, advanced to the defendant $300.00 for the use and benefit of his mother. The defendant admits a loan by the plaintiff in the sum of $300.00 which he used in paying for an automobile. An advancement in the sum of $500.00 was used by the defendant in improving the property and the sum of $300.00 used in raising the cottage, later sold to the State of New York for the sum of $3,500.00 or $4,000.00. She advanced the further sum of $300.00 around January 1, 1932, and was used by the defendant in buying supplies for the filling station. Total amount advanced, $1,700.00. She kept house, laundered and cooked for the defendant for many years and equally is this true when he began operating the filling station in January, 1932, and continued until October, 1933, and her usual monthly salary for similar services when she worked as a domestic ranged from $50.00 to $80.00 per month. We think the sum of $50.00 per month is reasonable monthly compensation to be allowed the plaintiff. She performed the same service at the tourist camp at Tampa from February 1st through October, 1934, when the defendant brought his bride to the camp and this litigation ensued. The burden of the proof here is that the plaintiff parted with her money and performed her

services under an agreement with the defendant that he would provide for, support and maintain her in her old age.

It will be observed from the facts appearing in the case, *supra,* that this Court held that a special equity existed in behalf of a person advancing money, performing labor and otherwise helping and assisting in the accumulation of money and property and that the court decree equity as between the parties when the facts are presented. It may be reasonablly inferred from the testimony adduced in this case that the money advanced by the plaintiff to the defendant was used by him in purchasing the tourist camp near Tampa during the month of January, 1934. Her services and labor were factors that aided the defendant in accumulating the money placed into the tourist camp and it appears from the evidence that an equitable lien exists in her behalf on the tourist camp property for the money advanced and the work and labor by her performed for the defendant.

In the case of Foster v. Thornton, 131 Fla. 277, 179 So. 882, when considering the application of an equitable lien, in part said:

"This Court had before it the question of an equitable lien in the case of Jones, Trustee, v. Carpenter, 90 Fla. 407, text 412-414, 106 So. 127, when it said: 'In Society of Shakers v. Watson, 68 Fed. 730, it was said that the doctrine of equitable liens is one of great importance and of wide application in administering the rights and remedies peculiar to equity jurisprudence. There is perhaps no doctrine which more strikingly shows the difference between the legal and the equitable conceptions of the juridical results which flow from the dealings of men with each other, from their express or implied undertakings. An equitable lien is not an estate or property in the thing itself nor a right to recover

the thing—that is, a right which may be the basis of a possessory action; it is neither a *jus ad rem* or a *jus in rem*. It is simply a right of a special nature *over* the thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditors in whose favor the lien exists. It is the very essence of this condition that while the lien continues the possession of the thing remains with the debtor or the person who holds the property interest subject to the encumbrance. Pomeroy's Equity Jurisprudence, Vol. 3 (4th Ed.), page 2958. * * *

" 'The equitable lien differs essentially from a common law lien, the latter being the mere right to retain possession of some chattel until a debt or demand due the person thus retaining it is satisfied. Possession being such a necessary element that if it is voluntarily surrendered by the creditor the lien is at once extinguished while in the former or equitable lien possession remains with the debtor or person who holds the proprietary interest. Jones on Liens (3rd Ed.), Vol. 1, 26; Pomeroy's Equity Jurisprudence (4th Ed.) Vol. 3, 2958; 17 R. C. L. 605.

"'From the foregoing it is seen that equitable liens arise from two sources, viz.: (1) a written contract which shows an intention to charge some particular property with a debt or obligation; (2) is declared by a court of equity as applied to the relations of the parties and the circumstances of their dealings in the particular case. Jones on Liens, *supra;* 17 R. C. L. 605, *supra;* 25 Cyc. 667 * * *.' "

Our conclusion is that the plaintiff is entitled to an equitable lien on the real property described in the bill of complaint for money advanced by her to the defendant in

the sum of $1,700.00, with interest at the rate of six per cent per annum from and after November 1, 1934, until paid. Likewise, for labor and services by her performed for the defendant at the sum of $50.00 per month from February, 1932, to October, 1933, inclusive, and from February, 1934, to October, 1934, inclusive, with interest at the rate of six per. cent per annum until paid. The equitable lien hereby declared may be enforced against the appellees' homestead exemption.

The order or decree appealed from is hereby reversed for further proceedings in the lower court not inconsistent with this opinion. The entire cost of this case shall be paid by the defendants.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.