William Wallace Sikes, prior to his death on April 9, 1906, owned Lots 7 and 8 of Block 77, North, according to a map or plat of the City of Miami as prepared by A.L. Knowlton, a civil engineer. On Lot 8 was situated two small business houses which were rented from time to time but the houses were later removed and the lot was converted into and used as a parking lot. Situated on Lot 7 is a rooming house consisting of approximately nineteen rooms and for many years past has been used as a rooming house.
William Wallace Sikes was living in the rooming house situated on Lot 8, supra, with his wife, Frances Evelyn Sikes, and four daughters at the time of his death in 1906. The names of his daughters were (1) Ella Elizabeth (Bessie) Sikes, born in 1894; (2) Cora Della Sikes Brown, a widow; (3) Mamie Lorena Sikes McKinstry; (4) Alice Frances Sikes Rose, who died a widow, without issue, but left her entire estate by will to her sister Cora Della Sikes Brown for the balance of her natural life and upon her death then to the son of Cora Della Sikes Brown, to-wit; William Wallace Brown. Mamie Lorena Sikes McKinstry died and left as heirs her husband, Paul McKinstry, and daughter Jack Allen Hannon, wife of John Glenn Hannon. Decrees pro confesso were entered against several of the defendants and the issues here are between Ella Elizabeth (Bessie) Sikes and her sister and nephew, Cora Della Sikes Brown and William Wallace Brown.
Frances Evelyn Sikes, widow of William Wallace Sikes, several years after the latter's death, married Charles Farmer Bailey and the parties lived together for some time as husband and wife but they were divorced, as shown by the record, on the 28th day of January, 1919. The heirs of the late William Wallace Sikes conveyed all their undivided interest in and to Lots numbered 7 and 8 of Block 77, supra, to their mother, Frances Evelyn Sikes, about the year 1917, and she continued to own said property until the time of her death on May 3rd, 1944. It is not disputed that Bessie Sikes lived with her mother in the rooming house situated on Lot No. 7, supra, from the year 1915 continuously until the date of her mother's death in 1944, a period of approximately 29 years.
Frances Evelyn Sikes, widow, at the time of her death, owned two lots fairly well located in the City of Miami. One of the lots, for a number of years, was used for a parking lot and situated on the other was a cheaply constructed rooming house, now old and dilapidated. It was constructed almost entirely of wood, while one section *Page 750 
was built of stone. It was never intended as a high class rooming house but suitable for elderly tourists going to Miami in the tourist season not financially able to pay prices demanded by high class hotels and boarding houses. According to the record, the old rooming house was highly respectable and operated entirely by Mrs. Sikes and daughter Bessie, except that period of time when one of the other daughters was present.
Bessie Sikes in 1906, at the time of her father's death, was twelve years of age and practically blind but had a vision of about 20% in one eye. It was impossible for her to attend the public schools of Dade County but arrangements were later made for her to attend the school for the blind at St. Augustine, where she graduated at the age of 21. She learned to write but it was very difficult for her to read and when so doing newspaper print had to be placed close to her right eye as her left eye was of but little service to her. She learned to type and worked in the office of Jackson Memorial Hospital for a short time after graduation. The State of Florida paid all her expenses at St. Augustine, inclusive of transportation to and from Miami. It appears by the record that she received monthly payments under the State Welfare Program for the blind. Cora Della Sikes, Mamie Lorena Sikes and Alice Frances Sikes each married, left the old dilapidated rooming house and established homes of their own in the City of Miami or elsewhere. Bessie never married but remained continuously with her mother in the rooming house after her return from the School for the Blind in about 1915 until the death of her mother, Frances Evelyn Sikes, in May 1944.
On August 10, 1943, about nine months prior to her death, Frances Evelyn Sikes executed her last Will and Testament and by Article III thereof devised and bequeathed unto Ella Elizabeth (Bessie) Sikes her entire estate, both real and personal, to have and to hold, in trust, for the full term of her natural life, and had the power under the terms of the will to sell the non-income producing property referred to in the will. The will was duly probated and Bessie Sikes by a court order was appointed executrix of her mother's estate. Mrs. Sikes, at the time of the execution of the aforesaid will, was about 75 years of age. The appraised value of the estate was fixed at approximately $20,000.00.
Less than sixty days prior to her death Mrs. F.E. Sikes wrote a letter to her attorney in the City of Miami substantially as follows:
"Mr. Price I can't tell you what my daughter services have been and are not to me. She has taken care of all business she has carried on for years. I couldnt have remained in business without her help and the place would have been lost. She has been on call night an day every since she finished blind school. therefore she is entitled to a mortgage to cover all drudgery she has gone through with all her life that no one would have done at any price the mortgage not less than 30 thousand, please * * * deeds in her name.
respectfully Mrs. F.E. Sikes."
Pursuant to the above letter a promissory note, under seal, for the sum of $20,000.00, dated Miami, Florida, March 20, 1944, payable to Ella Elizabeth (Bessie) Sikes on demand was signed and executed by Frances Evelyn Sikes. The payment of the demand note was secured by the execution of a mortgage on the same date encumbering Lots numbered 7 and 8 of Block 77, North, supra. The two instruments appear to be in proper legal form and after execution, the two instruments were delivered to attorney Price of said city, who had the same recorded in the Clerk's office and returned to him as attorney for Mrs. F.E. Sikes. Appearing on the face of the mortgage is the notation:
"This mortgage is executed for the purpose of re-imbursing the mortgagee in part for services rendered by her in looking after the mortgagor, assisting her in the operation of a rooming house, acting as her general housekeeper and nurse, and shall take precedence over any Will heretofore executed by the mortgagor." *Page 751 
The change in the amount of the note and mortgage from $30,000.00 as requested by Mrs. Sikes to the sum of $20,000.00 was arrived at by a telephone conversation had between Mr. Price and F.E. Sikes prior to the execution thereof.
Bessie Sikes, through counsel, filed suit for foreclosure of the above note and mortgage but subsequently caused the same to be dismissed, and immediately by an appropriate written instrument assigned and transferred the demand note in the sum of $20,000.00 and the mortgage securing the payment thereof to The Florida National Bank and Trust Company of Miami, Florida, and the bank, as trustee for Bessie Sikes, filed an amended bill of complaint against the appellees praying for a foreclosure of the mortgage. A pertinent allegation of the amended bill of complaint as to the many details over the years as performed by Bessie Sikes relied upon for the consideration of the note and mortgage is viz:
"Plaintiff further shows unto your Honor that for many years prior to the execution of the mortgage the said Ella Elizabeth (Bessie) Sikes lived with her mother, Frances Evelyn Sikes, in a small portion of the rooming house aforesaid; that she devoted her entire time and much painful labor to the operation, maintenance and upkeep of said rooming house, attending to the renting of rooms, the making of beds, the cleaning of the premises and such other services as are usually performed by a maid; that the said Ella Elizabeth (Bessie) Sikes is partially blind, but was able to see well enough to look after the rental and care of the rooms in said rooming house, and that the said Frances Evelyn Sikes would never have been able to operate said rooming house without the assistance of her daughter, Ella Elizabeth (Bessie) Sikes; that all of the Sikes daughters, except Ella Elizabeth (Bessie) Sikes, married and established domiciles in some other portion of the City of Miami or in the State of Florida, but that the said Ella Elizabeth (Bessie) Sikes lived unmarried with her mother, nursed her in sickness and in health and superintended the operation of the rooming house, rendering all physical services that were necessary from about 1917 down to the date of the execution of said mortgage; that Frances Evelyn Sikes died in May, 1944, substantially two months after the date of the execution of the mortgage aforesaid; that the clause appearing in the mortgage referring to the services rendered by the said Ella Elizabeth (Bessie) Sikes was inserted under the express written direction of the said Frances Evelyn Sikes; that the services rendered by the said Ella Elizabeth (Bessie) Sikes constituted an adequate consideration for the execution and delivery of said mortgage."
The defendants-appellees filed a motion to dismiss the amended bill of complaint to foreclose on twenty grounds in the court below and one of the grounds was that the amended bill of complaint and exhibits contained no equity. The motion to dismiss was overruled in the court below and this ruling was reviewed here on petition for writ of certiorari under interlocutory rule number 34, and the petition of the defendants-appellees was denied by this Court under date of April 14, 1948. See Fla., 36 So.2d 807. Question one of petition for certiorari, as shown by the brief, in effect contend that the allegations of the amended bill of complaint were legally insufficient to establish a lawful consideration. The language of the brief is viz:
"It is respectfully submitted that since in this case the amended bill of complaint and the instruments sued upon their face that the sole consideration for the subject mortgage and note was the past services of the daughter to the mother and no suggestion of any kind appears that such services were rendered pursuant to a prior or concurrent understanding between the parties that the same were to give rise to a legal obligation, the legal presumption as to the gratuitous character of such services must prevail, and the Chancellor should have dismissed the bill forthwith with prejudice, because if every allegation therein were proved by the most conclusive proof there could be no recovery."
 * * * * * * *Page 752 
"If the Court accepts, as we believe it must, our view as to the unenforceability upon its face of the mortgage here involved for the reasons set forth earlier in this argument, the question presently discussed will have relevance only in determining whether or not any purpose would be served in permitting the further amendment of the bill of complaint so as to set forth a possible claim that the services involved were rendered pursuant to a prior or concurrent agreement that the same should be the subject of compensation by the mother to the daughter. If by her receipt of the benefits under the will, the beneficial plaintiff is wholly precluded from asserting the claim against the estate which she now makes, it would seem to serve no useful purpose to permit attempts to bolster the amended bill by further amendments."
It is the writer's view that when the cause was considered here on petition for certiorari to review the order of the court below on motion of the defendants-appellees to dismiss the amended bill to foreclose, our denial of the petition placed in repose, in the then state of the pleadings, the legal sufficiency of the consideration of the note and mortgage and the enforceability thereof by the amended bill of complaint. The above conclusion rests upon the following authorities: Section 674.27, F.S.A., provides: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." Section 674.28: "What constitutes value. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time." In the case of Taylor v. American National Bank, 63 Fla. 631, 57 So. 678, 685, Ann.Cas. 1914A, 309, we held: "The general doctrine is that the note is the principal thing, and the mortgage an accessory, and that the transfer of the debt ipso facto carries with it the security." "The holder of the note may discard the mortgage entirely, and sue and recover on the note."
The case of Daniels v. Mercer, 105 Fla. 362, 141 So. 189, involved a deed or conveyance by the owner of a homestead to three of his children and excluded other adult children and their descendants. The wife of the owner joining in the conveyance died and the husband married twice thereafter. The deed recited: "It is understood by and between the parties hereto that the parties of the first part shall use and enjoy the said property during their life or lives, and at the death of both of the parties of the first part then the parties of the second part shall have the right to the immediate possession of the said property, and each and every part thereof and not before". One of the excluded grantees from the deed brought suit in equity to cancel the deed on the ground that the grantees in said deed did not pay a consideration for the described property. We sustained the deed and held that the title passed by the conveyance to the named grantees. In Bennett v. Senn, 106 Fla. 446, 144 So. 840, we held that where a mortgage appeared under seal a sufficient consideration may be presumed. In Wise v. Wise, 134 Fla. 553, 554, 184 So. 91, we held that a deed to property from a father to a son is not void for want of consideration, because a deed, being under seal imports a consideration at law. "A recital of consideration in deeds conveying property to grantor's children precluded cancellation on ground that deeds were without consideration."
The case of Parrish v. Robbirds, 146 Fla. 324, 200 So. 925, 926, involved an attack on a deed for the lack of a valuable consideration. The deed was from the owners of 320 acres of land to two of their daughters, to the exclusion of other children above 21 years of age. The deed contained the following recital: "It is a part of this conveyance, and a distinct condition of same, that said C.C. Robbirds and his wife shall remain in possession and control of the above property until the death of C.C. Robbirds, and this conveyance shall not become fully and completely absolute until *Page 753 
after the death of C.C. Robbirds; but at that time it shall vest absolute title in the grantees herein." In a suit to partition the property it was contended that the deed, supra, was void as there was no consideration of value therefor. We sustained the deed and in part said: "that the land was conveyed in return for services rendered during the last days of the grantors, in one case lasting several months and in the other several years, and that during the period the grantees lived with their parents and cared for them, they actually performed work upon the property."
The recent case of Cunningham v. Weatherford, 159 Fla. 864,32 So.2d 913, 915, was a suit on a promissory note in the sum of $20,000.00, and the amended declaration alleged that the real consideration for the $20,000.00 note was the looking after the maker's home, preparing his meals, nursing him in sickness and otherwise caring for him. It was alleged that the payee for more than two years after the agreement was made and before the note was executed rendered services, and the services continued to the time of the death of the maker of the note. It was contended here that the note could not be enforced because it was without consideration. We held against the contention and said: "We know of no better consideration for a note. If the consideration so alleged is proven, the note should be paid."
The defendants-appellees answered the amended bill of complaint and the pertinent issues made thereby are substantially viz: (1) they expressly denied that the note and mortgage sued upon were executed and delivered "for a valuable consideration"; (2) that the note and mortgage were executed without consideration and the alleged services rendered by Bessie Sikes to her mother were without contract or agreement for any compensation; (3) the execution of the note and mortgage was by Bessie Sikes procured by the exercise of undue influence upon her mother; (4) that Bessie Sikes, for various reasons, was estopped from the maintenance of the suit. A counter-claim was filed and other issues made by the pleadings, but they are not material on this appeal as no cross-assignments of error on this appeal are based on any rulings of the court incident thereto. A Special Master was appointed, heard all the testimony, made findings of fact and recommendations as to a decree. The Chancellor on final hearing held the equities of the cause to be with the defendants and the original plaintiff appealed.
The findings of fact as made by the Special Master to the Chancellor were: (1) there was no evidence in the record to show or establish undue influence practiced by Bessie Sikes on her mother, Frances Evelyn Sikes, in and about the giving of the note and mortgage, as alleged in the appellees' answer; (2) the defendants-appellees failed to adduce proof to show or establish that part of their answer which charged that Frances Evelyn Sikes was either ill, mentally incompetent, or under the influence of opiates at the time of the execution and delivery of the note and mortgage sought to be foreclosed. The report, in part, is viz: "The record is devoid of any proof of undue influence except the innuendos of the defendants, Cora Della Brown and William Wallace Brown, her son. The conclusion is inescapable therefore that Frances Evelyn Sikes knew what she was doing when she executed the note and mortgage sought to be foreclosed herein, and that by the execution of this note and mortgage, she was attempting to pay a debt which she felt she owed to her daughter, Ella Elizabeth (Bessie) Sikes for the services which she had rendered her over a period of years."
As to the applicable law, the Special Master held that the principle enunciated in Mills v. Joiner, 20 Fla. 479, was controlling, i.e., the plaintiff could not recover on the note and mortgage because she failed to adduce proof of a special contract or an expressed or implied promise or understanding whereby her mother, Frances Evelyn Sikes, agreed to pay her for her 29 years of service in and about the rooming house. Counsel for plaintiff-appellant excepted to the Special Master's report and contended that the rule in Mills v. Joiner, *Page 754 
supra, was inapplicable but the Chancellor overruled and denied the exception. It is contended here that the Chancellor below erred in denying exceptions of the plaintiff-appellant and in entering a final decree against her.
When the cause was before us on petition for interlocutory certiorari it was contended by counsel for defendants-appellees that the rule in Mills v. Joiner, supra, controlled the controversy. We denied certiorari. The burden of proving the several elements constituting the consideration as alleged in the amended bill of complaint rested on the plaintiff-appellant. The law does not require plaintiff to establish a special contract or agreement to pay between the mother and daughter as ruled by the Special Master and the learned Chancellor. See Sections 674.27 and 674.28, F.S.A.; Cunningham v. Weatherford; Parrish v. Robbirds; Daniels v. Mercer; Wise v. Wise; Bennett v. Senn, supra.
Mrs. Sikes, about two months before her death in her letter to attorney Price, requested the drafting of a note and mortgage to compensate her daughter Bessie for services rendered to her over the years: "She (Bessie) has taken care of all business she has carried on for years. I couldn't have remained in business without her help and the place would have been lost. She has been on call night and day every since she finished the blind school. therefor she is entitled to a mortgage to cover all drudgery she has gone through with all her life * * *" She signed the mortgage with the recital viz.: "This mortgage is executed for the purpose of reimbursing the mortgagee in part for services rendered by her in looking after the mortgagor, assisting her in the operation of a rooming house, acting as her general housekeeper and nurse * * *"
The Sikes family were members of the First Presbyterian Church of the City of Miami and the pastor, W.K.C. Thompson, visited in the home for 15 or 16 years prior to Mrs. Sikes' death in 1944. He testified as to the services rendered by Bessie — he "never saw any other daughter rendering any assistance". Dr. Thomas, attending physician to Mrs. Sikes, heard her say: "She hated to work her (Bessie) to death." "She (Bessie) had helped her ever since she was a kid". Anne Kew visited in the Sikes home since 1920 and testified that Bessie did the house work * * * in the rooming house for a period of 20 years. W. Cecil Watson, Clerk of the Criminal Court of Record, testified: "I would say she (Bessie) worked there all her life". Athene Foster testified about the services rendered at the rooming house by Bessie. Goldweber, an insurance agent, testified as to the services rendered by Bessie. Many other witnesses testified as to the menial services rendered at the rooming house since 1915 until her mother's death in 1944. Bessie testified, in part: "I worked like a slave for 29 years before she (Mrs. Sikes) died."
The witnesses testified before a Special Master and a report of the proceedings was filed with the Chancellor, with findings of fact and conclusions of law, coupled with recommendations as to a decree. Arguments of counsel were made, when the Chancellor studied the record and reached conclusions. The Chancellor did not observe the witnesses nor hear them testify.
The decree appealed from is reversed with directions to enter a final decree for the plaintiff-appellant according to the prayer of the amended bill of complaint.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur.