419 So.2d 1115 (1982)
Paul FRAMBACH and Allene Frambach, Appellants,
v.
Stanley H. DUNIHUE, Appellee.
No. 81-962.
District Court of Appeal of Florida, Fifth District.
August 25, 1982.
Rehearing Denied September 29, 1982.
John E. Hatcher, Jr., Winter Garden, for appellants.
*1116 Maxwell W. Wells, Jr. and Robert W. Morrison of Maxwell W. Wells, Jr., P.A., Orlando, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
The Frambachs appeal from a judgment awarding Dunihue an undivided one-half interest in their property. Two pieces of property were titled in the Frambachs' names. In parcel A the court imposed a resulting trust. In parcel B, the court determined that Dunihue was entitled to a one-half interest as an "equitable lien and equitable interest." By this appeal, the Frambachs question only the court's ruling as to parcel B on which their home was located.
The history of this case is an amazing account of human relationships. Why people who for many years had demonstrated an incredible ability to solve their disputes would ultimately end up in litigation is mystifying.
Dunihue was a widower with seven children to raise ranging in age from three to eleven. The Frambachs lived nearby with their four children. Contact between the parties started when Mrs. Frambach, a devoted churchwoman, asked if she could take the Dunihue children to church. She later became a babysitter and took care of the Dunihue children sometimes at their home and sometimes at hers for which she was paid $25.00 per week.
This arrangement continued for a few months. In September, 1960, the Frambachs and the Dunihues waited out a hurricane in the Frambachs' home. The Frambachs' house was small (a bedroom, living room and kitchen, 600 square feet in all) and had no inside plumbing. As fate would have it, the relationships which developed as the storm howled proved so interesting and the two families so congenial that the Frambachs and Dunihues decided to see if the two families could live together.
Dunihue set out to enlarge the house. A bedroom and bath were added and various improvements made. As the years passed, Mrs. Frambach had another child and for a time, until the Dunihue children began to move out, fifteen people (three adults and twelve children) lived in the house. Mrs. Frambach ran the household, did the cooking, and saw that the children cleaned, helped with the washing, and did such chores as were required and within their capabilities.
Both Dunihue and the Frambachs were employed. Dunihue on several occasions obtained employment for Mr. Frambach and their earnings were not substantially different, although Dunihue had the larger income. The Frambachs and Dunihue each had a bank account into which they deposited their respective earnings. Mrs. Frambach wrote checks on both accounts and decided in large measure which account would be used to pay a particular bill. Dunihue's characterization of the arrangement was probably the most appropriate, that it was just one family and whatever money was available was used wherever it was most needed. Very often the three shopped together for clothes, furniture, and automobiles.
Improvements in the home continued to be made. Dunihue's contributions to these improvements undoubtedly were the most valuable although everyone assisted. At the time of this litigation, the value of the home had appreciated to approximately $65,000. The court received considerable testimony of Dunihue's contributions to the improvements, but very little evidence was adduced as to the value of the services received by Dunihue and his family.
This arrangement lasted for nineteen years until the last of the Dunihue children were grown and gone. The relationship was suddenly terminated when Mrs. Frambach called Dunihue at work and told him to come get his things and get out. He was given thirty minutes to comply. The reason for the sudden end to the friendship was not clear.
After being ejected from the Frambachs' home, Dunihue brought suit to impose an equitable lien on the property. Dunihue claimed that the Frambachs had promised him a place to live for the rest of his life in *1117 exchange for his work. He further alleged that he had relied on this promise and that the Frambachs will be unjustly enriched at his expense if he is not compensated for his work. The Frambachs denied that they had made any such promise to Dunihue claiming that without the improvements it would have been impossible to house that many people.
The trial court determined that the two families had operated as a single family. While emphasizing that he was not making such an inference, the judge opined that the association of the parties was almost as close as though there had been a single wife and two husbands. The court then found that the pooling of assets and commingling of everything into a common pot was to assure Dunihue that he would have a home as long as he lived and that it would award Dunihue an equitable lien in the home. Regarding the amount of the lien, the court stated the following:
They did start out with a thousand-dollar equity, the [Frambachs]. But in effect because of the way they treated everything through the years, they really are just as though this was a divorce. And we are dividing up the property between a wife that had two husbands, so to speak. That's why I think the only fair thing to do is to make them tenants in common right down the middle. So that's my judgment.
As a general rule, a court of equity may give restitution to a plaintiff and prevent the unjust enrichment of a defendant by imposing a constructive trust or by imposing an equitable lien upon the property in favor of the plaintiff. Restatement of Restitution §§ 160-161 (1937). However, where the plaintiff makes improvements upon the land of another under circumstances which entitle him to restitution, he is entitled only to an equitable lien upon the land and he cannot charge the owner of the land as constructive trustee and compel the owner to transfer the land to him. Restatement of Restitution § 161, Comment a. Neither a constructive trust nor a resulting trust arises in favor of a person who pays no part of the purchase price even though he pays for improvements on the property. 5 Scott, The Law of Trusts, §§ 455.7,472 (3d ed. 1967). The person does not become, in whole or in part, a beneficial owner of the property although he may be entitled to reimbursement.
In the present case, the court, in effect, determined that the Frambachs held an undivided one-half interest in the property in trust for Dunihue. However, there was no evidence of a promise or agreement to deed a portion of the Frambachs' property to Dunihue in return for the improvements. Nor has Dunihue alleged that he actually paid a part of the purchase price. In these circumstances, Dunihue was not entitled to have a constructive trust imposed on the property. We therefore reverse the award to Dunihue of a tenancy in common and remand the cause for further consideration.
Upon remand, the trial court should determine the value of the respective contributions of Dunihue and the Frambachs. This can be accomplished by calculating the fair market value of the improvements attributable to Dunihue and the fair market value of the services rendered by the Frambachs to him during the nineteen years the parties lived together. In the alternative, the court could determine the cost to Dunihue for his labor, services and material in making the improvements as compared to the cost to the Frambachs of providing services to Dunihue. We suspect that, under either measure, the contributions of the parties will be equal. However, if the court finds that Dunihue's contributions exceed the value of the benefits received by him from the Frambachs, an equitable lien in this amount should be imposed to prevent the unjust enrichment of the Frambachs.
REVERSED and REMANDED.
ORFINGER, C.J., and COBB, J., concur.