Raymond S. Fitzpatrick v. Vermont State Treasurer, Vermont State Retirement Fund, Vermont State Retirement System, and State of Vermont

[475 A.2d 1074]

No. 82-077

Present: Billings, C.J., Hill, Underwood and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed February 17, 1984

*M. Martin Leinwohl*, Barre, for Plaintiff-Appellant.

*John J. Easton, Jr.*, Attorney General, and *Marilyn Signe Skoglund*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Gibson, J.** Plaintiff appeals from a dismissal of his complaint seeking additional membership retirement credits in the Vermont State Retirement System. We affirm.

Plaintiff was appointed attorney for the Unemployment Compensation Commission (U.C.C.)* on September 25, 1947, for a term ending February 1, 1948. His appointment was approved by the governor, and his position as attorney was exempt from the merit system rules and regulations that applied to other employees of the commission. In February 1948 the appointment was extended indefinitely. Plaintiff performed legal services for the commission or department as required by and under the supervision of the commissioner. He worked three days a week from his appointment in 1947 until June, 1950, when the commission approved an increase to four days a week; he began working a five-day week in October 1967. Throughout plaintiff's years of service the commission or de-

---

* In 1961 this commission became the Department of Employment Security, 1959, No. 329 (Adj. Sess.), § 4; in 1981 it was renamed the Department of Employment and Training, 1981, No. 66, § 1.

partment provided him with office space, furniture and equipment, secretarial service, telephone service, library and other services and supplies necessary for the performance of his duties. Plaintiff did not receive a salary, but rather was paid on a per diem basis according to the amount of time he worked.

In 1954, following an attorney general's opinion that such action would "not be unlawful," the retirement board granted plaintiff membership in the Vermont Employees' Retirement System. Plaintiff made contributions to the retirement system for more than three and one-half years, when he was notified that he was no longer considered eligible for membership. Plaintiff withdrew his accumulated contributions, with interest, in the amount of $1,247.40 in January 1958.

On July 1, 1968, plaintiff was appointed an assistant attorney general and placed on a salary status for the first time. He continued to serve as attorney for the Department of Employment Security, as it was then called, performing the same duties as before. Three years later, he was readmitted to membership in the retirement system, and he remained a member until his retirement on December 31, 1976. At that time he had accumulated a total of eight and one-half years of retirement credit, commencing as of the date of his appointment as an assistant attorney general.

In December 1976, plaintiff requested the retirement board to grant him additional retirement credits for his employment prior to his appointment as an assistant attorney general. The board postponed consideration pending receipt of an opinion from the attorney general as to plaintiff's eligibility. The opinion, when issued, stated that the board had discretionary authority to grant plaintiff's request, "should [it] see fit to do so." Thereafter, without affording plaintiff an opportunity to be heard, the board voted to deny the application as untimely; it also expressed its belief that plaintiff had abrogated his rights by obtaining a refund of his earlier contributions. Plaintiff attempted to appeal the ruling to this Court, but the Court dismissed the appeal for lack of jurisdiction absent a hearing before the board and an appeal therefrom to superior court. *Fitzpatrick* v. *Vermont State Retirement System*, 136 Vt. 510, 394 A.2d 1138 (1978).

Plaintiff went back to the retirement board, seeking a hearing on his petition, and when the board, after listening to

plaintiff, again denied his request, he appealed to superior court. Following hearing, that court dismissed plaintiff's petition, and plaintiff is now back before us.

Plaintiff contends the trial court erred in its finding and conclusion that he was engaged under special agreement or contract and thus not entitled to membership in the retirement system prior to his appointment as an assistant attorney general. Plaintiff also contends that the retirement board abused its discretion in denying his petition for membership credits, that its action was based on erroneous statements contained in an attorney general's opinion, that because contributions to the system are compulsory his rights therein were vested, that a pension was part of the compensation for which he had bargained, that he had had no opportunity to be heard before the retirement board prior to its January 27, 1978, decision, and that his request for additional retirement credits was not untimely. These latter contentions all depend on a determination that plaintiff was an eligible employee entitled to consideration by the retirement board, in its discretion, for membership in the retirement system; inasmuch as we hold, as a matter of law, that plaintiff was not entitled to membership in the retirement system prior to his appointment as an assistant attorney general, these contentions must fail and we do not address them.

The Vermont Employees' Retirement System came into existence on April 1, 1944, see 1947, No. 5, § 2, having been spawned by enabling legislation at the same time as the state classified service. 1941, No. 205 and No. 206. When plaintiff was first employed in 1947, membership in the retirement system was required for state employees, subject to an escape hatch for those who elected in writing not to join. The term "employee" was defined, in pertinent part, as "any regular officer or employee in a department who is employed for not less than forty calendar weeks in a year but shall not include . . . any person engaged under retainer or special agreement . . . ." V.S. 1947, § 516, IV (current version at 3 V.S.A. § 455(a) (9)).

The legislature provided no statutory definition of "employee" for purposes of the classified service, but left that detail to such rules and regulations as might be adopted. In 1947, the then-existing merit system rules and regulations covering classified employees of the U.C.C. specifically exempted U.C.C.

attorneys from the definition of employees of that agency. Plaintiff was not considered an employee of the U.C.C. within the classified service, nor was he required to join or to make any election with respect to membership in the retirement system.

In 1953, the legislature provided that the classified service should include "all positions in the state civil service" with certain exceptions; among the exceptions were "persons engaged under retainer, contract, or special agreement," 1953, No. 251, § 2(10) (current version at 3 V.S.A. § 311(a) (10)), virtually the same exclusionary language as that contained in the retirement system legislation. We refer to the statutes governing the classified service only to note the close relationship to those governing the retirement system and to note also that legislative action concerning one system often had repercussions that affected the other. In the last analysis, however, it is the statutory language of the retirement system which must determine this case.

Since 1953, plaintiff's status, vis-a-vis the retirement system, has been a matter of some uncertainty and has resulted in conflicting actions and opinions from time to time. In 1954, an attorney general's opinion concluded that the words "under retainer or special agreement" were intended to exclude independent contractors (implying that plaintiff did not fit within this category) and that "it would not be unlawful for the retirement board, should it so see fit, to find that [Mr. Fitzpatrick] is an employee of the state sufficiently to be eligible for membership in the retirement system . . . ." 1954 Op. Atty. Gen. No. 174. The opinion did not attempt to define the exclusionary term "special agreement." Upon receipt of the opinion, the retirement board granted plaintiff membership in the retirement system in 1954 pursuant to its authority under V.S. 1947, § 516, IV (current version at 3 V.S.A. § 455(a) (9)), that "[i]n all cases of doubt, the retirement board shall determine whether any person is an employee as defined in this chapter."

In 1957, the auditor of accounts ruled that persons hired under retainer, contract or special agreement were not employees of the state and not "subject to social security and other benefit deductions." This ruling, although it related to the classified

service, led to plaintiff's withdrawal from the retirement system in January 1958.

Also in 1957, the legislature added a stipulation that, whenever a person was hired under retainer, contract or special agreement, the employment would fall outside the classified service when the attorney general certified to the governor that such engagement was not contrary to the spirit and intent of the classification plan and merit system principles and standards. 1957, No. 102, § 1. Thereafter, the attorney general submitted such certifications on behalf of the plaintiff on forms that identified the arrangement as a special agreement.

Finally, in 1977, another attorney general's opinion, 1977 Op. Atty. Gen. No. 30-78, concluded that plaintiff was a state employee, at least from the time he first became a member of the retirement system in 1954, and thus eligible for membership in the retirement system within the discretion of the retirement board. Again, however, the opinion did not come to grips with the term "special agreement."

The statutes do not define the term "special agreement," and this Court has not had occasion to deal previously with it. Although the terms "agreement" and "contract" do not have precisely the same meaning, they are frequently used as exact synonyms. 1 A. Corbin, Corbin on Contracts § 9, at 20 (1963). In this case, plaintiff's agreement with the U.C.C. required the approval of the governor and was referred to as a contract in various personnel action forms. The agreement imposed duties and obligations on both plaintiff and the state and was, in effect, a contract between the parties. *Id.* at §§ 3, 9; Restatement (Second) of Contracts §§ 1, 3 (1982).

Although the term "special agreement" has not been defined, the term "special contract" has been defined as one with peculiar provisions or stipulations not found in the ordinary contract relating to the same subject matter, and which, if omitted, the law will not supply. *Wathen* v. *Superior Court,* 212 Cal. App. 2d 125, 129, 27 Cal. Rptr. 840, 842 (1963); *Oliver Cadillac Co.* v. *Rosenberg,* 179 S.W.2d 476, 479 (Mo. Ct. App. 1944); *Eisenbeck* v. *Buttgen,* 450 S.W.2d 696, 702 (Tex. Civ. App. 1970); 17 C.J.S. *Contracts* § 10, at 584. A special contract is always an express contract, *Armstrong* v. *Smith,* 49 Cal. App. 2d 528, 535, 122 P.2d 115, 119 (1942); *Oliver Cadil-*

*lac Co.* v. *Rosenberg, supra,* 179 S.W.2d at 479; 17 C.J.S. *Contracts* § 10, at 584, that is, one whose provisions are expressed and not dependent on implication. *Caffrey* v. *Tilton,* 38 Cal. 2d 371, 374, 240 P.2d 273, 274 (1952); *Armstrong* v. *Smith, supra,* 49 Cal. App. 2d at 535, 122 P.2d at 119. A special agreement, as contemplated in 3 V.S.A. § 455(a)(9), may therefore be defined as one containing express provisions not found in the ordinary agreement relating to the employment of state employees, which provisions, if omitted, the law will not supply.

The terms of the agreement under which plaintiff was hired were that he work three days per week as counsel for the U.C.C. and be paid on a per diem basis. His appointment was subject to the approval of the governor, and his position was specified as "exempt" from the merit system rules and regulations applicable to other employees. The agreement also expressly provided that plaintiff be paid for the first nine state holidays in the fiscal year and that he receive annual and sick leave credits accumulated on a pro-rated basis. Regular state employees receive holiday pay and annual and sick leave credits as a natural result of their employment. There was no provision for retirement.

Until hired as an assistant attorney general, plaintiff was paid by vendor's warrants and not from the regular state payroll; vendor's warrants are used to pay persons employed under contract or special agreement. The state withheld no federal or state taxes from plaintiff's wages, and it provided no W2 forms to plaintiff at the end of each year; plaintiff filed his tax returns as a self-employed taxpayer. Finally, when the attorney general certified to the governor that plaintiff's contract was not contrary to the spirit and intent of the classification plan and merit system principles and standards, he did so on a form that identified plaintiff's contract as a "Special Agreement."

■ Putting all of the above indicia together, the conclusion is inescapable that plaintiff's employment, until the time he was hired as an assistant attorney general, was by "special agreement"; as a result, he was ineligible for membership in the Vermont Employees' Retirement System.

*Affirmed.*