792 So.2d 702 (2001)
Howard McLANE, Appellant,
v.
Anna Gertrude MUSICK, et al., Appellees.
No. 5D00-3088.
District Court of Appeal of Florida, Fifth District.
August 31, 2001.
*703 Richard R. Cook, DeLand, for Appellant.
William N. DeVane, Jr., of Frigola, DeVane & Dorl, P.A., Marathon, for Appellees.
SHARP, W., J.
Howard McLane appeals from a final summary judgment which determined none of his claims filed against the estate of Loretta Monroe have any viability. McLane and Monroe had cohabited for a *704 number of years, under the understanding, according to McLane, that they would eventually marry and that each would execute a will in favor of the other. Neither event came to pass before Monroe was diagnosed with terminal cancer in 1997, and died shortly thereafter. No will was probated. Monroe's parents were appointed co-personal representatives of her intestate estate. McLane sought reimbursement from the estate for his services and economic contributions to Monroe's welfare and property. We affirm in part, and reverse in part.
McLane established the following factual basis for his claims for purposes of the summary judgment motion. McLane and Monroe began dating in 1990, and he moved into her home in the Florida Keys, where they lived together with Monroe's parents. They, together with McLane's parents, moved to Pierson, Florida in 1992, where Monroe had purchased ten acres of land and a mobile home, both titled in her name. McLane was just starting a business and had minimal insurance.
McLane testified he considered their relationship to be like husband and wife "except for the vows." They had one checking account and all the bills were paid from this account or by cash. He believed the joint checking account was established with rights of survivorship. McLane acquired additional equipment and machinery after they moved to Pierson, including a bulldozer, a grade-all and a small garden tractor. He paid for the equipment out of the joint checking account and all of it was titled in his name.
About two years prior to Monroe's death, McLane inherited $70,000 .00. Most of those funds were placed in the joint checking account or spent as cash. Monroe rented her property in the Keys, and the rental funds were also placed into the joint account. She did not work outside the home after they moved to Pierson. McLane used his business equipment to improve the property Monroe owned in Pierson, such as grading and putting in a road. He also paid for taxes, insurance, and legal bills for another property belonging to Monroe. After she became ill, he paid for her medical bills and services since she had no insurance, and he provided personal care and services through the date of her death.
Unfortunately for McLane, the parties had only a mutual understanding of their relationship, and agreement to dispose of their co-mingled assets and other properties, which effectively died with Monroe. They executed no written agreements, contracts or wills. Florida does not recognize common law marriages or quasispouses.[1] Thus, Florida residents who do not take formal steps to insure disposition of their assets after death or the welfare of persons they love during their lifetimes, may create unfair and unjust situations for their survivors, which the courts have no power to remedy.
In count one, McLane sought $21,000.00 to compensate him for personal care rendered to Monroe during her terminal illness. He calculated this at $50.00 per day for transporting Monroe to doctors and the hospital, and for taking care of her at home. When asked whether he did these things because of an expectation of being paid, he replied he would have rendered the services even if he knew he would not be paid, because of his love and affection for Monroe. In count two, he also sought reimbursement for $21,169.00 in medical *705 bills he paid for her out of their joint account.
The trial court was correct in denying any recovery for McLane on these two counts. When a person provides services to another without a written agreement regarding compensation, a promise to pay for those services will generally be implied.[2] However, this general rule is not applicable if the services are rendered by and for members of the same family or relatives who live together.[3] In such cases, no presumption arises that one is to be paid for the services rendered. In the absence of an express contract or promise to pay, no right of action accrues for the services, especially where the relationship evinces the mutuality or reciprocity of services, benefits and duties, which characterize normal family life. Id.
In this case, McLane testified that he and Monroe lived together as "husband and wife," sharing personal and business expenses. He put his inheritance into the parties' joint checking account. Monroe placed her rental income there and her other sources of income. They paid all their living expenses from the account. Their funds were so commingled that it would be impossible to establish whose funds paid for what and when. Clearly, they had a close family-like relationship, and not the kind of arm's length relationship for which the law will imply a contract for compensation. See, e.g., Thompson v. Korupp, 440 So.2d 68 (Fla. 1st DCA 1983) (former husband who cared for and supported wife's child was not entitled to recover child support payments received by his wife from the child's father on a theory of unjust enrichment where husband was compensated for care of the child by his exclusive use and possession of the marital home and by his claiming the child as a dependent for tax purposes). See also Florida Nat. Bank & Trust Co. of Miami v. Brown, 47 So.2d 748 (Fla.1949) (services rendered by daughter to her mother without a preexisting contract or agreement for compensation did not constitute valuable consideration for note and mortgage given by mother to daughter).
In counts three and four, McLane sought reimbursement for improvements he made to Monroe's property in Pierson, valued at $43,959.00 and $28,000.00. He alleged he was fraudulently induced to make these improvements by Monroe's promise that she would will the property to him. Although such allegations are insufficient to permit a court to impose a constructive trust and require the owner to transfer the property to McLane, they are sufficient to permit a court to provide him with restitution to prevent unjust enrichment. See Frambach v. Dunihue, 419 So.2d 1115 (Fla. 5th DCA 1982).
A court may declare that a person is entitled to an equitable lien, based on general considerations of right and justice as applied to the relationship of parties and the circumstances of their dealings. Johnson v. Craig, 158 Fla. 254, 28 So.2d 696 (1947). Equitable liens have been imposed in situations similar to those in this case, where the parties cohabited without benefit of marriage and without an express contractual arrangement. See, e.g., Johnson (plaintiff may be entitled to an equitable lien for his labor in improving property titled in the name of his mistress); Evans v. Wall, 542 So.2d 1055 (Fla. 3d DCA 1989) (evidence supported trial court's award of $8,000 on a constructive trust or equitable lien theory to reimburse unmarried female *706 cohabitant for reasonable value of her capital, materials and labor invested over a five-year period in her male cohabitant's residential and commercial property); Frambach (plaintiff may be entitled to an equitable lien for the value of improvements he made to the defendant's property where plaintiff and defendants lived together for nineteen years).
In Frambach, this court noted that any equitable lien would have to be determined by valuing the respective contributions of the parties:
This can be accomplished by calculating the fair market value of the improvements attributable to Dunihue and the fair market value of the services rendered by the Frambachs to him during the nineteen years the parties lived together. In the alternative, the court could determine the cost to Dunihue for his labor, services and material in making the improvements as compared to the cost to the Frambachs of providing services to Dunihue. We suspect that, under either measure, the contribution of the parties will be equal. However, if the court finds that Dunihue's contributions exceed the value of the benefits received by him from the Frambachs, an equitable lien in this amount should be imposed to prevent the unjust enrichment of the Frambachs.
419 So.2d at 1117.
In the present case, McLane's claimed valuation of his labor, services and improvements appears somewhat high. And the court may determine that the contributions of the parties were roughly equal. However, the determination of these matters are not appropriate in a summary judgment context.
In count five, McLane sought reimbursement for taxes, insurance and legal bills associated with unrelated property deeded to Monroe by a third person. He concedes, however, there are no facts pled to support a fraud claim on this count. Monroe's representation that she would will him her property occurred long after these funds were spent. However, McLane requests an opportunity to amend his pleadings to support an award based on implied contract or constructive trust.
We reject his argument. McLane admitted that Monroe wrote the checks from their joint account for these expenses, that he knew the checks were written out of this account, and that he never objected. As noted above, both parties contributed their separate funds to the joint checking account and neither objected to payment of the other's expenses from this account. The funds were not used to improve the property in Pierson and thus cannot be included in an equitable lien claim. Thus, there is no basis for McLane's recovery of these funds.
Accordingly, we affirm the trial court on counts one, two and five, but reverse and remand for further proceedings on counts three and four.
AFFIRMED in part; REVERSED in part.
THOMPSON, C.J., and HARRIS, J., concur.
NOTES
[1] Benavides v. State, 679 So.2d 1195 (Fla. 3d DCA 1996); Compagnoni v. Compagnoni, 591 So.2d 1080 (Fla. 3d DCA 1991), rev. denied, 601 So.2d 551 (Fla.1992); Walker v. Erpenbach, 553 So.2d 738 (Fla. 5th DCA 1989).
[2] In re Estate of Mundell, 459 So.2d 358, 361 (Fla. 5th DCA 1984), rev. denied, 467 So.2d 999 (Fla.1985) (Cowart, J., dissenting); 11 Fla. Jur.2d. Contracts § 315 (1997).
[3] 11 Fla. Jur.2d. Contracts § 315.