927 So.2d 1055 (2006)
James J. DELLA RATTA, Appellant,
v.
Joseph M. DELLA RATTA and Faye C. Della Ratta, Appellees.
No. 4D05-2932.
District Court of Appeal of Florida, Fourth District.
May 10, 2006.
*1057 Thomas J. Ali of Kramer, Ali, Fleck, Hughes, Gelb & Bornstein, Jupiter, for appellant.
Stephanie Reed Traband, Matthew Triggs and Bruce Gorman, Jr., of Proskauer Rose, LLP, Boca Raton, for appellee Joseph M. Della Ratta.
GROSS, J.
James J. Della Ratta appeals from a final judgment dismissing with prejudice his two-count amended complaint for failure to state a cause of action. See Fla. R. Civ. P. 1.140(b)(6). The pleading sought (1) damages for "unjust enrichment," and (2) the imposition of an equitable lien on a condominium apartment owned by appellees, Faye C. Della Ratta (James's mother), and Joseph M. Della Ratta (James's stepfather). We reverse, holding that the amended complaint adequately stated both causes of action.
In reviewing an order granting a rule 1.140(b)(6) motion to dismiss, this court's "gaze is limited to the four corners of the complaint." Gladstone v. Smith, 729 So.2d 1002, 1003 (Fla. 4th DCA 1999). The facts alleged in the amended complaint must be accepted as true and all reasonable inferences are drawn in James's favor. See id.
According to the amended complaint, appellees orally promised James that they would either convey the condominium to him as a gift or give him a right of first refusal to purchase the unit; estate planning considerations and tax consequences would determine the method of transfer. Appellees allowed James to occupy the condominium pending performance of their promises. Relying on appellees' assurance that he would one day own the unit by gift or purchase, James relocated to Florida and resided in the condominium. From the time he moved into the unit until the filing of the amended complaint, James paid all the carrying charges on the unit, including real estate taxes, maintenance fees, association fees, insurance, utilities, maintenance, and repairs. On an annual basis, these charges approximated $8,000.00 to $10,000.00. In addition to these payments, James made capital improvements of $40,000.00 to the condominium; all these improvements were made with appellees' knowledge and consent.
James claimed that the intent of the parties' arrangement was to allow him to live in the unit pending his ultimate receipt of title by gift or purchase. When he offered to purchase the condominium, appellee Joseph M. Della Ratta declined, indicating that he intended to sell the property to a third party.
The amended complaint sought two remedies  the imposition of an equitable lien on the condominium and an award of damages measured by "the value of the repairs and capital improvements" that James made to the unit.
*1058 "Whether the allegations of a complaint are sufficient to state a cause of action is a question of law." K.M. v. Publix Super Mkts., Inc., 895 So.2d 1114, 1116 (Fla. 4th DCA 2005). "It follows that this court applies a de novo standard of review to an order dismissing a complaint for failure to state a cause of action; we must accept the allegations of the complaint as true, but do not defer to the trial court's conclusions regarding the legal sufficiency of the allegations." Id.
As to the unjust enrichment count, the trial court's dismissal was based upon the fact that James's claim was for compensation for services between a child and his parent; the court applied "the presumption of law [ ] that a parent is not bound to pay a child, though of full age, for services while living with said parent at home and as one of the family in the absence of proof of a prior special contract or an express or implied antecedent promise to compensate the child." Fla. Nat'l Bank & Trust Co. of Miami v. Brown, 47 So.2d 748, 763 (Fla. 1950); see also McLane v. Musick, 792 So.2d 702, 705 (Fla. 5th DCA 2001). The trial court dismissed the equitable lien count because there were no "allegations of fraudulent inducement."
The trial court incorrectly applied the "family member presumption." The amended complaint does not allege that James lived with appellees when he resided in the condominium, a fact essential to the application of the presumption.
The supreme court articulated the "family member presumption" in Mills v. Joiner, 20 Fla. 479, 1884 WL 2067 (1884). There, a daughter sued her father for payment for housekeeping services she performed for him and her mother in their home for almost ten years. During this time, she lived in the home with her parents. The daughter alleged that her father agreed to pay for her services. Seven years later, the father reneged on the deal. At trial, the court charged the jury that the daughter could not recover unless she proved "`a special contract or express promise that she was to be paid for her services.'" Id. at 492; Mills, 1884 WL 2067, at *4 (emphasis in original). The jury found for the father.
As to this jury charge, the supreme court reversed, holding that the daughter could recover damages if she established that either an express contract or a contract implied in fact existed between her and her father.
The law raises no presumption of a promise to enable a child to maintain an action against the father to recover compensation; but the reverse may be established by proof of either an express or implied contract. An implied contract being proven by facts and circumstance which show that both parties at the time the services were performed contemplated or intended pecuniary recompense. It is competent in such a case for a jury to infer a promise by the father from the surrounding circumstances. It is a presumption of law that the father is not bound to pay a child, though of full age, for services while living with him at home and as one of the family; but this presumption may be overcome by proof of a special contract,[1] express promise, or an implied *1059 promise; and such implied promise or understanding may be inferred from the facts and circumstances shown in evidence.
Id. at 492-93; Mills, 1884 WL 2067, at *4 (boldface supplied); see also Brown, 47 So.2d at 759, 763 (supreme court followed Mills in affirming the ruling that a daughter had not proved an express or implied contract that overcame the family member presumption, even though the daughter had rendered services to her mother for many years).
The "family member presumption" described in Mills applies to personal services that a child performs for a parent while living "at home with [the parent] and as one of the family." Id. at 492; Mills, 1884 WL 2067 at *4. The amended complaint in this case did not plead this type of family relationship. James did not reside with appellees when he made the improvements described in the amended complaint. Also, James seeks reimbursement for the improvements he made to the condominium, not compensation for personal services rendered to appellees. Finally, even when the family member presumption is applicable, it may be overcome by proof of an express contract or a contract implied in fact. In this case, the family member presumption does not apply.
Count I of the amended complaint stated a claim for a contract implied in law, also known as "unjust enrichment." Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc., 695 So.2d 383, 386 (Fla. 4th DCA 1997) (en banc). To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. Id.; see Magwood v. Tate, 835 So.2d 1241, 1243 (Fla. 4th DCA 2003). If proven, the facts stated in count I of the amended complaint would support an unjust enrichment claim.
The equitable lien count also should have survived the motion to dismiss. In Florida, an equitable lien is an appropriate remedy to prevent unjust enrichment between family members or those with close personal relationships. See Palm Beach Sav. & Loan v. Fishbein, 619 So.2d 267 (Fla.1993); Johnson v. Craig, 158 Fla. 254, 28 So.2d 696 (1947); Sonneman v. Tuszynski, 139 Fla. 824, 191 So. 18, 19-20 (1939). "An equitable lien `is a right granted by a court of equity, arising by reason of the conduct of the parties affected which would entitle one party as a matter of equity to proceed against' certain property." Epstein v. Epstein, 915 So.2d 1272, 1275 (Fla. 4th DCA 2005) (quoting Gables Racing Ass'n v. Persky, 148 Fla. 627, 6 So.2d 257, 263 (1942)). Such a lien "may be declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." Plotch v. Gregory, 463 So.2d 432, 436 (Fla. 4th DCA 1985). One circumstance "justifying the imposition of an equitable lien exists `when the claimant has furnished funds for the improvement of land with the knowledge and consent of the owner.'" Id. (citations and footnote omitted); see Frambach v. Dunihue, 419 So.2d 1115 (Fla. 5th DCA 1982).
On the equitable lien count, James relies on McLane, 792 So.2d at 702, a case that supports his contention that he stated a cause of action for an equitable lien.
*1060 In McLane, Howard McLane and Loretta Monroe cohabitated for a number of years with the understanding that they would marry and each would execute a will in favor of the other. Monroe died intestate before they married. McLane sought reimbursement from Monroe's estate for his services and money he paid to support her property. Monroe and McLane first lived together in Monroe's home in the Florida Keys and then moved to Pierson, Florida, where Monroe purchased ten acres and a mobile home. The couple had a joint checking account with right of survivorship and paid for all their expenses and purchases out of the account. Both contributed funds to the account. McLane bought equipment for a land clearing business he started and used this equipment to improve Monroe's property by putting in a road and grading it. He also paid all of Monroe's medical bills out of the joint account and cared for her until she died. Id. at 704-05.
The trial court granted summary judgment against McLane on all his claims.
In count I, McLane sought monies for his personal care of Monroe during her terminal illness. When asked if he did this with the expectation of being paid, he said he would have rendered the services even if he knew he would not be paid. In count II, he sought reimbursement for the monies he paid for her medical bills which were paid out of their joint account. The fifth district affirmed the summary dismissal of these two counts, holding that in light of the couple's "close family-like relationship," there was insufficient evidence to "imply a contract for compensation." Id. at 705.
The second aspect of McLane is pertinent to the equitable lien count in this case. In two other counts of his complaint, McLane sought reimbursements for improvements he made to Monroe's property in Pierson. He alleged that he was fraudulently induced to make the improvements by Monroe's promise to leave the property to him. The district court found that these allegations were sufficient to permit a court to impose an equitable lien on the property to prevent unjust enrichment. Id. at 705-06.
Appellees attempt to distinguish McLane by pointing out this case involves no allegations of fraud. However, fraud is not the only basis for imposing an equitable lien. In Fishbein, the supreme court "clarified that equitable circumstances other than fraud or misrepresentation, including the prevention of unjust enrichment, are proper grounds for imposing" an equitable lien. Spridgeon v. Spridgeon, 779 So.2d 501, 502 (Fla. 2d DCA 2000); see Plotch, 463 So.2d at 436 n. 1.
The unjust enrichment claim in count I of the complaint was an action at law.[2] The same grounds that would support a claim for unjust enrichment as a contract implied in law would also justify the imposition of an equitable lien.
In the light most favorable to James, the amended complaint states a cause of action for unjust enrichment supporting both an action at law for damages and an equitable *1061 lien for the value of the repairs and capital improvements. See Sonneman, 139 Fla. at 829-32, 191 So. at 20-21.
We reverse and remand to the trial court for further proceedings.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] In WPB, Ltd. v. Supran, 720 So.2d 1091, 1092 (Fla. 4th DCA 1998), we explained that a "special contract"

is one with peculiar provisions or stipulations not found in the ordinary contract relating to the same subject matter. These provisions are such as, if omitted from the ordinary contract, the law will never supply.
(citing 17 C.J.S. Contracts § 10 (1963)). "A special contract is always an express contract, `one whose provisions are expressed and not dependent on implication.'" Id. (citing Fitzpatrick v. Vermont State Treasurer, 144 Vt. 204, 475 A.2d 1074, 1077 (1984)).
[2] In Florida, all implied contract actions, including unjust enrichment,

were part of the action of assumpsit, which was an action at law under the common law. E.g., Boyce Constr. Corp. v. District Bd. Of Trustees, 414 So.2d 634, 637, n. 1 (Fla. 5th DCA 1982); Carter v. Suggs, 190 So.2d 784, 788 (Fla. 1st DCA 1966). Although some Florida courts have described quasi contracts as being "equitable in nature," "e.g., Gene B. Glick Co., Inc. [v. Sunshine Ready Concrete Co.], 651 So.2d 190 [(Fla. 4th DCA 1995)], the term has been used in the sense of `fairness,' to describe that quality which makes an enrichment unjust, and not as a reference to the equity side of the court."
Commerce P'ship, 695 So.2d at 390.