411 So.2d 253 (1982)
Michael POE, Appellant,
v.
ESTATE OF Gertrude LEVY, Deceased, and Does I through Xx, Appellees.
No. 79-2338.
District Court of Appeal of Florida, Fourth District.
March 3, 1982.
Rehearing Denied April 5, 1982.
*254 Robert J. Compton and L. Anton Rebalko of the Law Offices of Compton & Herskowitz, Fort Lauderdale, for appellant.
Robert M. Bulfin of Law Offices of Carl W. Turner, Fort Lauderdale, for appellee-Barbara Weiner, as Personal Representative of the Estate of Gertrude Levy.
PER CURIAM.
Appellant, Michael Poe, seeks reversal of a judgment dismissing his five count Complaint and Amended Supplemental Complaint, which he filed against the appellees, Estate of Gertrude Levy and her heirs.
On April 3, 1979, Poe filed an original Complaint containing five counts: Count I sought enforcement of an express support contract; Count II was for declaratory relief of Poe's rights and interests in real and personal property; Count III sought a constructive trust in certain property due to the confidential relationship between Poe and the decedent, Gertrude Levy; Count IV sought enforcement of an implied contract between Poe and Levy creating a joint ownership in certain property held in Levy's name; Count V sought quantum meruit for the reasonable value of services Poe rendered to Levy during the period of their relationship. A further complaint styled a Supplemental Complaint was filed April 4, 1979, in which Poe specifically named Levy's heirs, who had theretofore been named as "Doe" defendants. On June 20, 1979, appellees filed a motion to dismiss and strike the complaint which was noticed for hearing August 20, 1979. Later, on July 13, 1979, Poe filed an Amended Supplemental Complaint which for all intents and purposes realleged the same five counts against the same parties as contained in the original and supplemental complaint. August 1, 1979, appellees moved to dismiss and strike the Amended Supplemental Complaint and noticed those motions for hearing also on August 20, 1979. The trial court granted the appellees' several motions to dismiss and strike and dismissed the complaint and Amended Supplemental Complaint on the grounds that "the cause of action asserted therein is repugnant to the laws and public policy of the State of Florida."
From the foregoing final judgment Poe has perfected this appeal contending that the trial court erred a) in dismissing the Amended Supplemental Complaint, b) in dismissing Poe's cause of action with prejudice upon improper notice of hearing, and c) in holding Poe's claim is repugnant to the laws and public policy of Florida.
We find no reversible error in the procedural aspects of the trial court's ruling because Poe was on notice of the substantive questions to be considered at the hearing scheduled for August 20, 1979. Thus, even though there may have been some arguable irregularity, it was harmless.
Poe's third point constitutes the crux of this appeal. The substantive questions raised by Poe's complaints are in some respects questions of first impression in Florida involving, as they do, issues similar to those involved in the celebrated case of Marvin v. Marvin, 557 P.2d 106, 134 Cal. Rptr. 815 (1976).
Since the decision being reviewed is a judgment dismissing Poe's complaint we recite the facts as set forth in the Amended Supplemental Complaint. Michael Poe and Gertrude Levy commenced a friendship in 1971, which eventually resulted in a living arrangement simulating a lawful marriage. When the relationship began Poe was a 58 year old single man and Levy was a 53 year old married, but estranged, woman. Poe alleges that he and Levy decided to live together and pool their resources which they did in an allegedly platonic fashion until Levy's lawful husband departed this world. Thereafter, it is alleged that Levy and Poe became lovers and lived as husband and wife, enjoying all of the burdens and pleasures which generally accompany the marital state.
In support of Count I of his Complaint for enforcement of an express support contract, Poe alleges he and Levy entered into "a cohabitation agreement" which included *255 an agreement to pool their resources and funds in common bank accounts for the purpose of acquiring property and paying for the necessities of life. It is alleged that Levy had no liquid assets and required support from Poe, which necessitated his changing his previous semi-retired lifestyle and taking on additional employment. In 1975 Levy's estranged husband died, at which time "the complexion of the relationship which existed between Poe and Levy changed" from that of friends to lovers. The complaint alleges that Levy induced Poe to devote his time, energy, and talents in advising Levy in business investments.
It is further alleged that he complied with these requests because of her representations that she wanted to marry him and intended to share all of her wordly belongings with him. In 1976-77 Levy became physically incapacitated requiring Poe to devote his entire time and energy to her maintenance, care and support. As a result of their mutual discussions Levy and Poe entered into an express agreement whereby in consideration for Poe's attending to Levy's total needs Levy "considered and regarded her individually acquired property as belonging to both of them." The two of them decided to get married, but Levy's demise occurred first. Regardless of the fact that they were not legally married, they acted like married people and held themselves out as such and they intended to purchase a condominium in their joint names. Finally, Poe alleges he fully performed his part of the bargain until Levy died, but her personal representative and her heirs refuse to acknowledge the above described agreement.
In support of his claim based upon implied contract, Count IV of the Amended Supplemental Complaint, Poe alleges additionally that during the course of their association he and Levy had the same relationship as would a couple who had been legally married; among other things, they divided all their earnings and acquisitions accruing during the relationship on the same basis as if the two were joint venturers. Furthermore, the Complaint alleges that Levy impliedly promised to give Poe the same financial security and property rights that he would otherwise have had in a legal marital relationship. She impliedly promised to give him one half of all of her assets acquired during the relationship. Therefore, Poe claims at all times he had a reasonable expectation that, if the couple parted for whatever reason, there would be an equal division of all of their assets acquired during their relationship together.
Count V, sounds in quantum meruit. Therein Poe alleges he is entitled to the reasonable value of the services he rendered during the period 1971-1979 at the instance and request of Levy.
In Count II of the Amended Supplemental Complaint Poe seeks a declaration of his rights to the various properties acquired during the relationship of the parties, which property he refers to as "equitable property." Due to the agreements set forth earlier in his Complaint, Poe claims to be the owner of a one-half interest in this "equitable property." However, he alleges he needs a judicial determination of those rights under the alleged contracts.
Finally, Count III alleges that a constructive trust arose as a result of the confidential relationship existing between the couple. It is alleged that Levy promised she would transfer title to all property she owned to herself and Poe jointly upon the sale of the couple's domicile; that Poe relied upon that representation and thus pursued various courses of action in reliance upon this representation. This count states that Levy's heirs all knew of the couple's plans and agreements.
Poe's Complaint then prays for damages; for an undivided one-half interest in all of the "equitable properties" described; that the personal representative and other heirs hold the property in question subject to a constructive trust. Poe also prays for partition of the properties and for the reasonable value of his services, costs and attorney's fees.
Apparently the trial judge felt the core of each cause of action alleged was the unlawful, meretricious relationship which *256 Levy and Poe shared and, as a consequence, any agreement, express or implied, which arose therefrom was unenforceable. The general rule is that if the consideration for an agreement is illicit sexual intercourse the agreement is unenforceable. Hewitt v. Hewitt, 77 Ill.2d 49, 31 Ill.Dec. 827, 394 N.E.2d 1204 (1979); Restatement of Contracts, § 589 (1932); 6A Corbin, Contracts, § 1476 (1962). However, if the consideration for the agreement is not sexual intercourse then the mere fact the parties are not married should not ipso facto preclude the parties from contracting according to law. Thus it appears to us that a cause of action based on an express contract or for construction of a trust is enforceable regardless of the fact that the parties may be cohabiting illicitly as long as it is clear there was valid, lawful consideration separate and apart from any express or implied agreement regarding sexual relations. For example, if two people are cohabiting contrary to the provisions of Section 798.02, that should not preclude them from being able to enter into a valid contract to purchase property with their joint or separate funds. If the elements of a constructive trust exist, the trustee should be made to account. Likewise, a claim based upon an express contract with independent consideration should be enforceable. Accordingly, Counts I, II and III state a cause of action which is not against public policy and they should not have been dismissed.
In Count IV the appellant attempted to state a cause of action for damages for breach of an implied contract. Again, by this count, the appellant seeks to recover one-half of the property owned by the deceased. Appellant's claim under this count is predicated entirely on an allegation that the parties "had the same relationship to the same force and effect as would a couple who would have been legally married." The appellant alleges that by virtue of this relationship he was entitled to one-half of the deceased's property. We do not believe these allegations are sufficient to state a cause of action for implied contract. First, even if the parties had been legally married at the time of the death of the deceased, the appellant would not necessarily have been entitled to one-half of the property of the deceased. Secondly, to allow the appellant to make a claim against the deceased's estate on the same basis as if the parties had been married would, in essence, constitute implying in law a marriage that never existed contrary to the law in Florida abolishing common-law marriages and establishing certain legal prerequisites to establish a valid legal marriage. No jurisdiction to our knowledge has gone this far. Hence, we do not believe a proper cause of action for implied contract was set out in Count IV and for that reason we find no error in the trial court's dismissal.
In Count V the appellant sought to recover the reasonable value of the services he rendered to the deceased on a quantum meruit theory. However, in direct contradiction to such claim the appellant alleged that the services were rendered "at the special instant and request of the DECEASED and for which the DECEASED agreed to pay the Plaintiff a stated sum." In our view these allegations of an express agreement preclude, in the same count, a claim for quantum meruit. See Solutec Corp. v. Young & Lawrence Associates, Inc., 243 So.2d 605 (Fla. 4th DCA 1971), and Tobin and Tobin Insurance Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975). Since we do not believe appellant properly alleged a cause of action for quantum meruit we find no error in the trial court's order of dismissal of Count V.
As we have noted before the trial court's order of dismissal was expressly predicated on public policy considerations as opposed to the sufficiency of appellant's allegations assuming there was no public policy bar to the action. We have considered the sufficiency of the appellant's allegations under various theories in the interest of judicial economy and for the benefit of the trial court upon remand. For these reasons we also hold that nothing in this opinion should preclude the appellant from being entitled to file amended pleadings directed to the same theories of recovery which we have *257 found lacking. Although we do not believe appellant's allegations were sufficient we do note that related claims have been recognized, when properly pleaded, in other jurisdictions. Cf.: Matter of Estate of Steffes, 95 Wis.2d 490, 290 N.W.2d 697 (1979).
For the foregoing reasons we reverse the dismissal of Counts I, II and III and affirm the dismissal of Counts IV and V and remand the cause for further proceedings including leave to amend Counts IV and V.
DOWNEY, ANSTEAD and HURLEY, JJ., concur.