542 So.2d 1055 (1989)
Douglas EVANS, Appellant,
v.
Kathie WALL, Appellee.
No. 88-1024.
District Court of Appeal of Florida, Third District.
May 2, 1989.
*1056 Greg C. McGibney, Homestead, for appellant.
Dillon & Carter and Robert E. Dillon, Miami, for appellee.
Before HUBBART, FERGUSON and JORGENSON, JJ.

ON MOTION FOR REHEARING
FERGUSON, Judge.
This case is about reimbursing a woman  ejected from her former lover's home  the reasonable value of capital, materials, and labor invested over a five-year period, in his residential/commercial property. It is not at all about palimony, or any other novel legal theory, as the dissent suggests.[1]
Douglas Evans and Kathie Wall, unmarried, agreed in 1982 that Kathie and her minor child would reside with Douglas in a mobile home on his land. Kathie worked outside the home and used her income to contribute food, telephone, household furnishings, and household services which included cooking, washing, and cleaning. She also worked in Douglas's mango groves spraying, mowing, fertilizing, mulching, and otherwise caring for the grove. With the aid of friends, whom she solicited, Kathie assisted in the construction of a new concrete block dwelling on the land. She also contributed money and supplied materials for the construction of a barn.
Kathie alleges that when Douglas met another woman, with whom he apparently wanted to share his new abode, he ordered Kathie to vacate the premises. Kathie left, after being assaulted by Douglas, taking with her only the personal property which she owned separately. When she moved in with Douglas in 1982 the property had a value of $90,000. When Kathie departed five years later, the land and improvements had a value of approximately $165,000.
Douglas initiated this lawsuit in December, 1987, on a complaint for eviction. Kathie counterclaimed for the imposition of a constructive trust seeking recovery of the value of materials, funds, and labor that she provided to enhance Douglas's lands.
On the counterclaim the material and disputed facts were (1) whether Kathie made contributions to Douglas's lands for the benefit of both parties; (2) whether the contributions were stimulated by a confidential relationship between the parties; (3) whether Kathie's contributions enhanced the value of Douglas's land; and (4) whether failure to grant Kathie an interest in the increased property value would constitute an unjust enrichment to Douglas. After a nonjury trial Kathie was awarded $8,000 plus costs. Douglas appeals contending, first, that this is not a case where equity should intervene.
As a matter of law, a constructive trust may be imposed to do equity between unmarried cohabitants. Botsikas v. Yarmark, 172 So.2d 277 (Fla. 3d DCA), cert. dismissed, 179 So.2d 211 (Fla. 1965). A cause of action for a constructive trust is maintainable between parties cohabiting illicitly as long as it is clear that there was a *1057 valid, lawful consideration separate and apart from any express or implied agreement regarding sexual relations. Poe v. Estate of Levy, 411 So.2d 253 (Fla. 4th DCA 1982). Money, labor, and material  separate and distinct from spouse-like services  are valid consideration that will support the imposition of a constructive trust. Botsikas.
There is a second theory  equitable lien  which will support the judgment. On similar facts, involving an unmarried cohabiting couple, the supreme court, applying broad equitable principles, held:
An `equitable lien' ... may be declared by a court of equity out of general consideration of right and justice as applied to relations of the parties and circumstances of their dealings in the particular case.
(Cite omitted). Johnson v. Craig, 158 Fla. 254, 258, 28 So.2d 696, 699 (1947). In Johnson the court considered the plaintiff's labor, as well as that of his friends in building the defendant's home, and the plaintiff's donation of borrowed money used to finance the construction.
There may be a legitimate dispute as to the quality and quantity of proof on the value of the services. Our inquiry here, however, is limited to deciding whether there is any competent and substantial evidence in support of the trial court's findings in the nonjury proceedings. Because there is such evidence, although disputed, the judgment must be affirmed. Green v. Hartley Realty Corp., 416 So.2d 50 (Fla. 3d DCA 1982); Oceanic Int'l Corp. v. Lantana Boatyard, 402 So.2d 507 (Fla. 4th DCA 1981).
Affirmed.
JORGENSON, Judge, dissenting.
I respectfully dissent.
Ms. Wall counterclaimed for imposition of a constructive trust and damages for unjust enrichment and breach of contract for payment of wages for her services. The trial court, however, did not specify the basis of its $8,000 award to Ms. Wall.
The majority assumes that Ms. Wall prevailed on her claim for imposition of a constructive trust. However, "[n]either a constructive trust nor a resulting trust arises in favor of a person who pays no part of the purchase price even though he pays for improvements on the property." Frambach v. Dunihue, 419 So.2d 1115 (Fla. 5th DCA 1982) (citation omitted). Ms. Wall testified that she paid no portion of the purchase price. Mr. Evans paid the entire purchase price for the property from his own funds and never promised to deed the property to Ms. Wall or hold it in trust for her. She was, therefore, not entitled to have a constructive trust imposed on the property. Moreover, the court's reliance upon Botsikas v. Yarmark, 172 So.2d 277 (Fla. 3d DCA), cert. dismissed, 179 So.2d 211 (Fla. 1965), is misplaced. In Botsikas, we held that, upon the facts alleged in the complaint, the plaintiff, who was defendant's live-in lover, had stated a cause of action for imposition of a constructive trust. The plaintiff alleged that she and the defendant had "entered into a partnership for life to acquire property," that she had "contributed capital from her own resources and in addition operated, managed and supervised hotel properties acquired by the partnership, all in furtherance of the alleged partnership activity; that certain properties were purchased for the partnership but taken in the name of the deceased [defendant] only or in the names of certain corporations[,]" and that she was "entitled to her interest in the properties and profits thereof either as a partner or upon the theory of a constructive trust." Botsikas, 172 So.2d at 278. (Emphasis added.)
Even if she had paid a portion of the purchase price of the property, the allegations of Ms. Wall's counterclaim and the evidence she presented at trial fall far short of the facts established in Botsikas to state a cause of action on a constructive trust theory. The record reveals that Ms. Wall mowed, fertilized, and sprayed Mr. Evans's four acres of mango groves and helped pick the mango crop. The crop which she helped harvest was sold for $165. Ms. Wall's assistance in building the new house on Mr. Evans's property consisted in laying concrete block for one day, *1058 staining the exterior of the house, mixing cement, and transporting building materials with her truck. Ms. Wall was not the only worker on this project: friends of hers and Mr. Evans also contributed labor. Ms. Wall was unable to produce any evidence with respect to the amounts of money she allegedly contributed toward the construction of the house or the horse stall, built for Ms. Wall's daughter's horse, which relieved Ms. Wall of paying boarding fees of $50 per month for the horse. The majority emphasizes that Mr. Evans's property increased in value from $90,000 in 1982 when Ms. Wall moved in to $165,000 in 1987 when she left. However, there is no apparent connection between the appraised value of the property and any services Ms. Wall allegedly performed.
Ms. Wall's claim for damages for unjust enrichment is a thinly veiled plea for palimony. If she truly sought damages for unjust enrichment, the trial court would have had to compare the value of Ms. Wall's services and contributions to those of Mr. Evans. See, e.g., Frambach, 419 So.2d at 1117 (once court of appeals determined imposition of a constructive trust improper, case remanded to trial court with instructions to consider value of parties' respective contributions; equitable lien should be imposed if contributions of claimant exceeded value of benefits received from landowner). See also Miceli v. Gilmac Developers, Inc., 467 So.2d 404, 406 (Fla. 2d DCA 1985) (compensation to one making improvements to another's land should be measured by amount by which improvements have enhanced the value of the owner's estate, less the reasonable rental value of the land for the period in question). Compare Johnson v. Craig, 158 Fla. 254, 28 So.2d 696 (1947) (equitable lien imposed for reasonable value of labor for improving land; no set-off for use and occupancy where cohabitant cosigned note for construction loan).
Throughout the parties' five-year relationship, Mr. Evans paid all mortgage payments on the property, the electric bill, and some of Ms. Wall's personal expenses. Ms. Wall herself testified that she and Mr. Evans split the work on the property "50-50." Both maintained full-time jobs.
Careful review of the record, including the trial transcript, reveals that, although Mr. Evans raised the affirmative defense of set-off and presented evidence of his contributions, financial and otherwise, the trial court failed to compare his contributions to those of Ms. Wall. Were this a valid claim for unjust enrichment, the trial court's error in failing to apply the affirmative defense of set-off would, at the very least, require that this case be remanded.
It appears that the trial court randomly arrived at the figure of $8,000 awarded as damages to Ms. Wall. There is no basis in the pleadings or the record for that particular amount or, in fact, for any amount of compensation for Ms. Wall.[1]
Simply stated, the arrangement between Mr. Evans and Ms. Wall was one of mutual convenience and was grounded upon a love relationship which, unfortunately, turned sour.
I sympathize with Ms. Wall's lament: "Why should I give up five years of my life for nothing?" However, I agree with Judge Sharp that "[t]he law of Florida creates no legal rights or duties between liveins." Lowry v. Lowry, 512 So.2d 1142, 1144 (Fla. 5th DCA 1987) (Sharp, J., specially concurring). In approving the trial court's award of $8,000 to Ms. Wall, the majority implicitly recognizes the right of a spurned live-in lover to collect palimony.
I would reverse.
JORGENSON, Judge, dissenting from denial of en banc rehearing.
On appropriate motion, the court conferenced this case and denied further review.
If the State of Florida is to recognize enforceable duties and obligations between live-in lovers, an unequivocal declaration to that effect must come from either the Florida supreme court or the Florida legislature. It is inappropriate for an intermediate *1059 appellate court to establish a new cause of action arising from the fallout of unmarried, cohabiting lovers. When a panel does so, as here, it is certainly a matter of great public importance, worthy of the court's en banc consideration.
SCHWARTZ, C.J., and BARKDULL and LEVY, JJ., concur.
NOTES
[1] There is also a dissent from the denial of a rehearing en banc on grounds that the case is of exceptional importance. We might infer, from the fact that no motion for rehearing en banc was filed, that the appellant did not think that there was any jurisdictional basis for en banc consideration. The legal theories supporting the trial court judgment are cornerstones of American jurisprudence.
[1] Ms. Wall could not have prevailed on her claim for breach of contract for payment of wages for her services; she herself testified that she was to receive no wages.