Gregory T. **FLYNN, M.D., Plaintiff,**

v.

**SARASOTA COUNTY PUBLIC HOSPITAL BOARD d/b/a Sarasota Memorial Hospital, Defendant.**

**Gardner, Wilkes, Shaheen & Candelora, P.A., Claimant,**

v.

**Gregory T. Flynn, M.D., Respondent.**

**No. 8:97–CV–2911–T–26TBM.**

United States District Court, M.D. Florida, Tampa Division.

Oct. 15, 2001.

Richard B. Wilkes, Gardner, Wilkes, Shaheen & Candelora, Tampa, FL, Scott A. Forman, Vernis & Bowling of Miami, P.A., North Miami, FL, Anthony Thomas Leon, Law Firm of Anthony T. Leon, Tarpon Springs, FL, for plaintiff.

Frank E. Strelec, Frazer Frost Hilder, David A. Wallace, Williams, Parker, Harrison, Dietz & Getzen, Sarasota, FL, for defendant.

Richard B. Wilkes, Joshua E. Burnett, Gardner, Wilkes, Shaheen & Candelora, Tampa, FL, for claimant.

Rodney W. Morgan, Shear, Newman, Rosenkrana, Burton & Lamb, P.A., Matthew J. Meyer, Piper Marbury Rudnick & Wolfe, Tampa, FL, for movant.

## ORDER

LAZZARA, District Judge.

This cause comes before the Court pursuant to the Report and Recommendation of Magistrate Judge Thomas B. McCoun, III (Dkt.295), recommending that the Notice of Charging Lien (Dkt.211) be discharged and no additional fees for Gardner, Wilkes, Shaheen & Candelora, P.A. (Gardner Wilkes) be permitted. Gardner Wilkes has filed Objections (Dkt.299), and Dr. Flynn has filed a Response (Dkt.301). Gardner Wilkes seeks additional attorney's fees of $250,000, or to impose a charging lien in an undetermined amount. After carefully considering the Notice of Charging Lien (Dkt.211), the Amended Response to Notice of Charging Lien (Dkt.215), the Report and Recommendation on the validity of the charging lien, the Objections, the Response, the transcript of the evidentiary

hearing held before Judge McCoun on July 16 and 17, 2001 (Dkts. 289, 290, and 294), a post-hearing memorandum filed by Dr. Flynn (Dkt.291), a post-hearing memorandum filed by Gardner Wilkes (Dkt.292), and the numerous admitted exhibits in the file, the Court concludes that the Report and Recommendation should be confirmed and approved in all respects and made a part of this order for all purposes.

It is therefore **ORDERED AND ADJUDGED** as follows:

1.  The Report and Recommendation of Magistrate Judge Thomas B. McCoun, III (Dkt.295) is confirmed and approved in all respects and made a part of this order for all purposes. Hence, Gardner Wilkes is not entitled to any additional attorney's fees from Dr. Flynn.

2.  The Charging Lien (Dkt.211) is hereby discharged.

### *REPORT AND RECOMMENDATION*

MCCOUN, United States Magistrate Judge.

THIS MATTER is before the court for a Report and Recommendation on the Notice of Charging Lien (Doc. 211) filed in this cause on October 13, 1999, by former counsel to Plaintiff, Gardner, Wilkes, Shaheen & Candelora, P.A. ("Gardner, Wilkes"). By its charging lien, Gardner, Wilkes seeks from Plaintiff additional legal fees to be paid from the proceeds of the settlement reached in the underlying action. Gardner, Wilkes's claim for such additional fees is founded upon an alleged agreement by the Plaintiff to pay reasonable fees or, alternatively, under a theory of *quantum meruit.* Plaintiff filed a response in opposition (Doc. 214) which was amended (Doc. 215). An evidentiary hearing was conducted on July 16 and 17, 2001. In addition to numerous exhibits, the court has received additional legal arguments from counsel. *See* (Docs. 291, 292). While the charging lien claims no specific sum, Gardner, Wilkes sought a fee enhancement of $250,000.00 from the Plaintiff shortly after settlement was reached in this cause. As discussed below, its expert opined at the hearing that a reasonable fee under the circumstances of this case would be in the range of one million dollars. For the reasons set forth herein, I conclude that no such enhancement is due to counsel and that the charging lien should be discharged.

### I.

Mr. Wilkes was lead trial counsel for Plaintiff, Gregory T. Flynn, M.D., in this action. The pertinent chronology is as follows. The suit was filed in 1997. The cause proceeded to jury trial in May 1999. On May 26, 1999, the jury awarded Plaintiff $8,650,000.00, exclusive of attorney's fees and costs. Judgment was entered on May 27, 1999. Among the post trial motions filed with this court was a claim by Plaintiff's trial counsel for attorney's fees pursuant to 42 U.S.C. § 1988 and costs pursuant to Rule 54 of the Federal Rules of Civil Procedure. *See* (Doc. 177).[1] The motion also sought to correct the judgment to allow time for Plaintiff to seek fees and costs. In a supplemental pleading, Plaintiff requested $956,425.00 in fees as against the defendant hospital. The sum was calculated upon a lodestar fee amount of $382,570.00 with a 2.5 multiplier and justified on the basis of the substantial nature of the verdict, the difficult circum-

---

1.  Plaintiff was also represented at trial by Anthony Leon, formerly of the Gardner, Wilkes firm. By the time of trial, Mr. Leon had left the firm but continued to represent the Plaintiff as general counsel. Both Mr. Wilkes and Mr. Leon filed affidavits in support of the motion seeking fees against the hospital, but Mr. Leon does not seek an enhanced fee against the Plaintiff.

stances involved in the representation, the significant delay in Plaintiff's payments to Gardner, Wilkes, and the complex nature of the case. *See* Affidavit of Mark Buell, Esq. (Doc. 202). The motion sought an additional $262,841.50 as an element of damages on the § 1983 claim for legal fees expended in the underlying administrative proceedings and resultant court proceedings, as well as an eviction action. *Id.* On June 17, 1999, the court directed the parties to mediate the matter of fees and costs.

On June 21, 1999, a Corrected Judgment was entered whereby the court reserved jurisdiction to consider entitlement to and the amount of fees and costs as well as any request for injunctive relief. (Doc. 180).

On August 4, 1999, the mediation was concluded with the parties agreeing to settle all outstanding disputes in exchange for the Defendant's payment of $6,500,000.00 to the Plaintiff. The parties agreed that the instant suit would be dismissed with prejudice and each party would bear its own fees and costs. *See* (Pl.'s Exh. 29).

Although Gardner, Wilkes had notified Dr. Flynn that it might seek additional fees over and above its hourly rate, no specific demand for such fees was made until August 13, 1999 when Gardner, Wilkes notified Plaintiff that it was seeking an additional $250,000.00 "write up" because of the favorable result. *See* (Pl.'s Exh. 19, Clmt.'s Exh. 70).

A partial satisfaction of judgment was filed with the court on September 7, 1999.

On October 12, 1999, Gardner, Wilkes filed the Notice of Charging Lien.

A final satisfaction of judgment was filed on January 7, 2000.

Other facts established by a preponderance of the evidence are as follows. Gardner, Wilkes first undertook to represent the Plaintiff in or about October 1994 in connection with efforts by the defendant hospital to suspend the doctor's medical privileges. On October 25, 1994, Gardner, Wilkes, through Mr. Wilkes, forwarded an engagement letter to the Plaintiff confirming the firm's fee arrangement for representation on that matter. In pertinent part the letter states:

> For any and all services rendered, we will be paid a reasonable fee. This will be based on several factors, including our time, which means charges based upon an hourly rate for the attorney/paralegal performing a given service at the time of performance. This rate will vary from $110.00 to $220.00 per hour, depending upon the experience and level of seniority of the attorney or paralegal involved. These rates are subject to upward adjustment from time to time. We will, to the extent possible, use junior attorneys and paralegals to perform the work, limiting the participation of senior attorneys. I anticipate that I will be predominantly involved in the work on this file, and my current hourly billing rate in matters of this nature is $195.00 per hour.

*See* (Clmt.'s Exh. 3). Gardner, Wilkes thereafter represented Plaintiff on a number of legal matters. Over time, the hourly rates were increased. With the exception of an auto accident case, for which there was a contingency fee agreement, there were no other written agreements related to fees. Consistent with the letter of engagement, Gardner, Wilkes periodically billed the Plaintiff for its legal services. All of the billings, with the exception of the one contingency fee matter, sought fees calculated on the basis of an hourly rate for services performed. On occasion, Gardner, Wilkes made courtesy adjustments to its billings favorable to the Plaintiff. Payment and billing records reveal that Plaintiff, on occasion, fell behind in payment of his fees and at times, the amount owed was substantial. Shortly be-

fore the trial in this action, Mr. Wilkes threatened to withdraw from representation because of overdue fees and costs. In resolution of the fee dispute, Plaintiff and his wife agreed in April 1999 that any outstanding fees and costs could be taken from any settlement or judgment in this action. *See* (Clmt.'s Exh. 32). At about this time, Plaintiff asked Mr. Wilkes to assume the litigation on a contingency basis. Mr. Wilkes refused. In any event, Mr. Wilkes continued to represent the Plaintiff through trial and until he was dismissed on September 13, 1999.

Shortly after trial, Mr. Wilkes and Mr. Leon, together with Mark Buell, Esq., their fee expert, began discussions related to the Plaintiff seeking fees against the hospital pursuant to 42 U.S.C. § 1988. Mr. Buell inquired of the fee agreement. It was confirmed that no specific fee agreement had been entered between Plaintiff and counsel in regards to the section 1983 action. As a result, Mr. Wilkes sought to confirm with the Plaintiff that the fee agreement called for the payment of a "reasonable fee." This was left to Mr. Leon to determine, and he reported back to Mr. Wilkes and Mr. Buell that Plaintiff agreed that the fee was to be a reasonable fee. The evidence indicates that the discussion between Mr. Leon and the Plaintiff in this regard was solely in the context of their seeking fees against the hospital and not in relation to a claim for enhanced fees by counsel against the Plaintiff.

On August 4, 1999, the day that the hospital board met to discuss settlement, Mr. Wilkes confirmed to Plaintiff that unbilled fees and costs through August 3, 1999, totaled $15,613.71. Mr. Wilkes also advised that additional fees and costs might well be due and owing, and he con-

firmed prior discussions that his firm might wish to make an adjustment to the fees based on various factors, including the result obtained. *See* (Pl.'s Exh. 16). Although the testimony of Plaintiff and Mr. Wilkes is in conflict, the court is satisfied that by August 4, 1999, Plaintiff had notified Mr. Wilkes, either directly or through counsel, that he was disputing any claim that he pay a "results fee" and that he would dispute any claim by Mr. Wilkes for such additional fees. *See* (Clmt.'s Exh. 62). Nevertheless, on the day following the settlement, Mr. Wilkes notified Plaintiff that the firm was seeking an additional $250,000.00 in fees as a "write-up."

The preponderance of the evidence also establishes that although the original engagement letter entitled Gardner, Wilkes to a reasonable fee, the factors otherwise recognized in the law which support the determination of such a fee were not part of the engagement letter and do not appear to have been agreed to by the Plaintiff at any time during this litigation. Indeed, the course of dealings here suggests that the reasonableness of Gardner, Wilkes's fee had always been defined by the hourly rate and hourly billings, together with any courtesy adjustments made by counsel. While the evidence indicates that Plaintiff agreed that counsel could pursue enhanced fees against the hospital, there was no similar agreement by Plaintiff to pay any enhanced fees to his attorneys. I conclude that the Plaintiff neither expressly nor impliedly agreed to pay fees above the hourly rate by reason of the result obtained or any other factor.[2] Further, I conclude that Plaintiff never agreed to the payment of a results fee out of the settlement amount.

**2.** The testimony by witness Harvey Moore that Plaintiff had indicated to him that Gardner, Wilkes would be taken care of in the end, and if he did well, Gardner, Wilkes would do well, is no basis for the court to conclude that Dr. Flynn ever agreed to a fee enhancement.

Plaintiff has paid Gardner, Wilkes nearly $300,000.00 in fees and costs for this section 1983 action. In addition, Plaintiff paid Mr. Leon in excess of $150,000.00 in fees and costs for this action. Bruce Rogow, Esq., retained to assist in post trial matters and for the appeal, negotiated a contingency agreement and was paid $162,500.00, despite there being no appeal. Plaintiff's expert witness, M. "Trip" Barlow, Esq., opined that a reasonable fee in this case would range from 15% to 20% of the settlement amount, or a range between $975,000.00 to $1,300,000.00 dollars. In contrast, the Plaintiff's expert, Robert Stoler, Esq., opined that the fees actually billed by Gardner, Wilkes were reasonable fees for the services rendered in this case. In this expert's view, the write up of $250,000.00 was unreasonable.[3]

## II.

Gardner, Wilkes justifies its claim for additional fees on the basis of the language in the engagement letter indicating· its entitlement to a "reasonable fee." Alternatively, it urges entitlement pursuant to a theory of *quantum meruit.* Under either theory, given the complex nature of the litigation, the perceived difficulty in dealing with the Plaintiff, the delay in payments, and the outstanding result, Gardner, Wilkes urges that it is entitled to the fees by way of a charging lien. In response, Plaintiff argues that the charging lien was untimely, having been filed after the entry of judgment and final settlement in this case; the fee agreement as evidenced by the engagement letter and the subsequent course of conduct between the parties establishes that the fee was to be based upon hourly billings paid at an hourly rate; Plaintiff never otherwise made an

informed decision to pay a fee which included a results obtained write-up; that the fee now sought would improperly award Gardner, Wilkes a fee in excess of the contract rate; and the remedy of *quantum meruit* will not lie where there is an express agreement.

▪ Charging liens are a creature of Florida common law. Such a lien is an equitable right to have costs and fees due an attorney for services rendered in a suit secured by the judgment or recovery in that suit. *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom,* 428 So.2d 1383, 1384 (Fla.1983). The Florida Supreme Court has identified four requirements for a valid charging lien:

> To impose such a lien, the attorney must show: (1) an express or implied contract between attorney and client; (2) an express or implied understanding for payment of attorney's fees out of the recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice.

*Daniel Mones, P.A. v. Smith,* 486 So.2d 559, 561 (Fla.1986).

▪ Under Florida law, "there are no requirements for perfecting a charging lien beyond timely notice." *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik v. Baucom,* 428 So.2d 1383, 1385 (Fla. 1983). In *Daniel Mones, P.A.,* the Florida Supreme Court stated, "[i]n order to give timely notice of a charging lien an attorney should either file a notice of lien or otherwise pursue the lien in the original action." *Daniel Mones, P.A.,* 486 So.2d at 561. By this decision, a claimant attorney is "... obligated to notify his clients in some way before the close of the original proceeding

---

**3.** Mr. Barlow's opinion was based on his review of certain pleadings and his consideration of those factors enumerated at Rule 4–1.5(b) of the Rules Regulating the Florida Bar and by comparison to litigation which he had

handled. Mr. Stoler relied upon his familiarity with section 1983 actions as well as the customary rates in this market to conclude that the straight lodestar method resulted in a reasonable fee in this instance.

that he intend[s] to pursue the charging lien." *Id.* Stated otherwise, "all that is required to entitle the attorney to perfect a charging lien 'is for the attorney to file the notice of lien or otherwise pursue the lien in the original action' prior to its termination." *Brown v. Vt. Mut'l Ins. Co.,* 614 So.2d 574, 580 (Fla. 1st DCA 1993) (quoting *Hannah v. Elder,* 545 So.2d 503, 504 (Fla. 4th DCA 1989)). The close of the original proceeding may occur upon settlement, entry of final judgment or dismissal of the action. Numerous courts have denied imposition of a charging lien where the notice was given subsequent to judgment. *See Schur v. Americare Transtech, Inc.,* 786 So.2d 46, 48 (Fla. 3d DCA 2001) (charging lien untimely where counsel failed to pursue before entry of final judgment); *Citizens & Peoples Nat'l Bank of Pensacola v. Futch,* 650 So.2d 1008, 1015 (Fla. 1st DCA 1994) (charging lien untimely absent notice prior to entry of judgment); *In re Ritchie,* 225 B.R. 806, 807–08 (Bkrtcy.S.D.Fla.1998) (charging lien untimely where notice filed fifteen months after entry of final judgment and court did not retain jurisdiction regarding charging lien); *Scutieri v. Revitz,* 829 F.Supp. 387, 392 (S.D.Fla.1993) (charging lien untimely where notice filed almost two years after entry of final judgment); *Galitz v. Edghill,* 113 B.R. 783, 785 (Bkrtcy.S.D.Fla.1990) (charging lien untimely where notice filed eighteen days after entry of final judgment and court did not retain jurisdiction to impose charging lien).

In some cases, Florida courts have found a charging lien perfected even after settlement. For example, in *Sinclair, Louis,* the court found a charging lien timely where oral notice of the possibility of such lien and a written motion to enforce such lien were given by counsel after it learned of a secret settlement entered by their client but before the court granted a dismissal of the case. *Sinclair, Louis,* 428 So.2d at 1385; *see also Miller v. Scobie,* 152 Fla. 328, 11 So.2d 892, 894 (1943); *Brown,* 614 So.2d at 580–81; *Hannah v. Elder,* 545 So.2d 503, 504 (Fla. 4th DCA 1989); *Strickland v. Frey,* 187 So.2d 84, 86 (Fla. 4th DCA 1966); *United States v. Transocean Air Lines, Inc.,* 356 F.2d 702, 705–06 (5th Cir.1966). However, a review of these cases suggests that the particular circumstances of the case dictated the equitable result. *See Mones,* 486 So.2d at 562 (Boyd, C.J., concurring) ("There have been cases where this Court has approved imposition of equitable lawyer's liens on real and personal property after termination of the proceedings ..., but all such cases showed special equitable circumstances.").

▌ After careful consideration, I conclude that the notice of charging lien in this case was untimely, coming as it did well over three months after the Corrected Judgment and over two months after the mediated settlement of all remaining issues and claims.[4] However, even if it is concluded that Gardner, Wilkes timely no-

---

4. Although the Corrected Judgment reserved the court's jurisdiction to determine Plaintiff's claim for fees and costs as against the Defendant, the court did not reserve jurisdiction on the matter of a charging lien. The settlement agreement fully resolved the remaining fee issue as well as all other issues between the parties. Although counsel did advise Plaintiff that the firm might assert a claim for additional fees after the successful verdict, it was not until after settlement that it billed Plaintiff for the $250,000.00 "write-up." Even if this

billing/letter constituted notice of a charging lien, which I do not believe it did, it was untimely in light of the settlement. I have considered the April 1999 letter by Plaintiff and his wife authorizing the deduction of outstanding fees and costs from any settlement or judgment against the Defendant. In my view, it does not suffice as notice of, nor give Gardner, Wilkes a lien for, the type of fees the firm now seeks. *Cf. Forman v. Kennedy,* 156 Fla. 219, 22 So.2d 890, 891 (1945).

ticed Plaintiff of its charging lien, for the reasons set forth below, I conclude that the firm may not rightly claim additional fees, nor a charging lien for additional fees, in this case.

· First and foremost, there can be no lien because there was never an agreement between Plaintiff and Gardner, Wilkes, either express or implied, which authorized the firm to receive an enhanced fee from the Plaintiff over and above the agreed hourly rate by reason of results obtained in this lawsuit. Nor was there ever an express or implied agreement to allow for recovery of such an enhanced fee from the judgment or the settlement amount. In fact, nothing in the record permits me to conclude that Plaintiff made an informed decision to pay any fee other than one calculated according to Gardner, Wilkes's hourly rates and hourly billings.[5] The letter of engagement, which unilaterally claimed for the firm the right to a "reasonable fee," neither identified the factors to be employed in deciding a reasonable fee, nor set out the firm's right to claim an enhancement for results obtained. The course of conduct between the firm and Plaintiff only confirms that the fees were based on hourly billings and counsel's hourly rate.[6] In these circumstances, there is no enforceable agreement by Plaintiff to pay any sum in addition to that which he has already paid because of the favorable result. *Cf. May v. Sessums & Mason, P.A.,* 700 So.2d 22, 25–26 (Fla. 2d DCA 1997). There being nothing more owed by the Plaintiff, there can be no charging lien.

■ Upon the conclusion that the fee agreement here establishes a contract rate based upon hourly billings and hourly rate, it follows that there can be no charging lien for additional fees as Florida law clearly holds that there can be no award of fees which is in excess of the contract rate. *See Albert v. Goldman–Link,* 661 So.2d 1293, 1294 (Fla. 4th DCA 1995); *Rosenberg v. Levin,* 409 So.2d 1016, 1021 (Fla. 1982). There being a valid fee agreement, it also follows that Gardner, Wilkes may not recover on its alternative but mutually exclusive theory of quantum meruit. *See ThunderWave, Inc. v. Carnival · Cruise Lines,* 954 F.Supp. 1562, 1566 (S.D.Fla. 1997); *Garcia v. Cosicher,* 504 So.2d 462, 463 n. 2 (Fla. 3d DCA 1987), *rev. denied,* 513 So.2d 1060 (Fla.1987); *Poe v. Estate of Levy,* 411 So.2d 253, 256 (Fla. 4th DCA 1982); *Snyderburn v. Moxley,* 652 So.2d 945, 947 (Fla. 5th DCA 1995).

These are equitable proceedings. In my view, Gardner, Wilkes cannot in good conscience claim that its "reasonable fee" lan-

---

5. The Florida Bar's rules of professional conduct require that an attorney explain matters with sufficient clarity to allow the client to make "informed decision." *See* Rule 4–1.4(b), Rules Regulating the Florida Bar. Here, there is no evidence that the term "reasonable fee" was ever explained to the Plaintiff to include a results obtained aspect until after the judgment when Plaintiff agreed that such a fee could be sought against the hospital. There is no evidence at all that this definition of the term was ever explained to and agreed with by the Plaintiff as it might relate to a claim by Gardner, Wilkes against him. Stated otherwise, counsel's explanation of his definition of a reasonable fee in this case came too late for an informed decision.

6. As I earlier determined, the parties had a valid fee agreement consisting of the engagement letter as confirmed by the subsequent conduct of the parties. *See* (Doc. 242 at 5–6 n. 2). Although the engagement letter was unsigned and a unilateral agreement, it became binding on the parties upon the mutual performance of the respective obligations. *See McGill v. Cockrell,* 88 Fla. 54, 101 So. 199, 201 (1924); *see also Wright & Seaton, Inc. v. Prescott,* 420 So.2d 623, 627 (Fla. 4th DCA 1982) (quoting 17 C.J.S. Contracts § 100(3) at 799–800 (1963)) ("Although a contract is lacking in mutuality at its inception, such defect may be cured by the subsequent conduct of the parties.").

guage in the engagement letter allowed Plaintiff to make an informed decision about the possibility of an enhanced fee based upon results obtained such that the firm may now, post-judgment and post-settlement, claim for such an enhanced fee. In this context, the $250,000.00 write-up initially sought by Gardner, Wilkes was improper and inherently unreasonable. To allow the same or even greater "write-up" under the guise of a charging lien is untenable. It is a familiar maxim that he who seeks equity must do equity. Here, although it obtained an outstanding result, Gardner, Wilkes has failed to do equity in relation to its post-trial fee dispute with the Plaintiff, and I conclude that it is neither unreasonable nor inequitable in this case that the firm be held to the benefit of its own bargain and denied additional fees.[7] For his part, the Plaintiff has done nothing to alter this conclusion. As discussed above, he never implicitly or explicitly consented to pay more than the agreed hourly rate for the reasonable hourly rates billed by Gardner, Wilkes.[8] While Plaintiff did occasionally fall behind in the payment of the fees, there is no demonstration of bad faith or deliberate dilatory conduct on his part. Apart from the verdict, the whole of other circumstances and the equities in this case favor the Plaintiff. Although the verdict is one which, in other circumstances, might justify a larger fee than that received by Gardner, Wilkes, that fact alone does not tip the equities in Gardner, Wilkes's favor.

In conclusion, the record reflects that Plaintiff has paid Gardner, Wilkes for all its services and costs rendered in this suit. While Gardner, Wilkes did an outstanding job for its client, and the client perhaps ultimately can claim the better end of the bargain, the firm offers the court no lawful or equitable basis to support its unilateral efforts to enhance its fees or to impose the charging lien. Accordingly, **I RECOMMEND** that the court decline to recognize the right of Gardner, Wilkes to claim additional fees or to impose a charging lien in any sum.

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; M.D. Fla. R. 6.02; *see also* Fed.R.Civ.P. 6 and M.D. Fla. R. 4.20.

---

7. When offered the opportunity of assuming the representation on a contingency fee basis shortly before trial, Mr. Wilkes declined. Counsel had the opportunity at that point to clarify and even modify the fee arrangement. The only change extracted from the Plaintiff was the agreement to allow any outstanding fees and costs to be deducted from the judgment or the settlement. To the extent that, at

this point, the terms of the fee agreement remained vague, under Florida law, such terms should be construed against the drafter, Gardner, Wilkes. *See e.g. City of Homestead v. Johnson*, 760 So.2d 80, 84 (Fla.2000).

8. That Plaintiff agreed to allow counsel to seek reasonable fees against the hospital is of little consequence.