821 So.2d 1163 (2002)
Caryn Heidi FORREST, Appellant/Cross-Appellee,
v.
Ami RON, Appellee/Cross-Appellant.
No. 3D0-3498.
District Court of Appeal of Florida, Third District.
July 17, 2002.
*1164 Scott Margules; Cynthia L. Greene, Miami, for appellant/cross-appellee.
Deborah Marks, North Miami, for appellee/cross-appellant.
Before COPE, FLETCHER and SHEVIN, JJ.
SHEVIN, Judge.
Caryn Forrest, the mother, appeals, and Ami Ron, the father, cross-appeals a Final Judgment Determining Paternity, Child Support, Parental Responsibility and other *1165 relief. We reverse the judgment as follows.
In the main appeal, the mother seeks reversal of the trial court's rulings as to several issues. We address each issue in turn. First, we reverse the portion of the judgment that refuses to enforce, as illegal, the parties' stipulation as to "bridge-the-gap" money. The parties, who are the parents of a minor child, lived together in the father's home for several years. After the mother and child moved out of the residence, she filed an action to determine paternity, parental responsibility, and for child support. The parties entered into a stipulation during the pendency of the proceedings. The stipulation provided that the mother would abate the proceedings and the parties would attempt a reconciliation in which the mother, father and child would reunite as a family. Recognizing that the mother and child would need to re-establish a home if the reconciliation was unsuccessful, the father agreed "to provide `bridge-the-gap' money for the Mother and child to establish their own residence...."[1] The agreement also provided that such residence must be "suitable for the child."
It is well settled that "[a] cause of action based on an express contract ... is enforceable regardless of the fact that the parties may be cohabiting illicitly as long as it is clear there was valid, lawful consideration separate and apart from any express or implied agreement, regarding sexual relations." Poe v. Estate of Levy, 411 So.2d 253, 256 (Fla. 4th DCA 1982); Dietrich v. Winters, 798 So.2d 864 (Fla. 4th DCA 2001); Posik v. Layton, 695 So.2d 759 (Fla. 5th DCA 1997); Crossen v. Feldman, 673 So.2d 903 (Fla. 2d DCA 1996); Stevens v. Muse, 562 So.2d 852 (Fla. 4th DCA 1990); Evans v. Wall, 542 So.2d 1055 (Fla. 3d DCA 1989)(court awarded funds to co-habitant on constructive trust theory). A review of the stipulation and the testimony shows that the stipulation was not illegal.
Here, the parents' agreement to attempt a reconciliation for a three-month period in order to re-establish a family unit in the best interests of their child, to provide a home for the child, and to avoid expensive and protracted litigation is valid and lawful consideration separate and apart from any agreement regarding sexual relations. The parties lived together for several years contributing money and services for the maintenance of their household and working together in the father's store. When their child was born, the mother became a full-time homemaker. They sought to avoid litigation and reestablish that relationship for their benefit as well as the benefit of the child. As such, the consideration is not sexual services, and, therefore, the agreement does not rest on illicit meretricious consideration. See 25 Fla. Jur.2d Family Law § 38 (2002). "[A]lthough the parties undoubtedly expected a sexual relationship, this record shows that they contemplated much more." Posik, 695 So.2d at 762. Accordingly, we conclude that the record presents no basis for finding the stipulation illegal.
We also reverse the court's ruling as to the child's need to attend private school. The judgment provides that: "The Court declines to find that private school is a special need of the minor child in that there has been no evidence of that. There has been no evidence that public school is *1166 not appropriate for the child."[2] The child, who was six at the time of the final hearing, had attended two years of pre-kindergarten and kindergarten at private schools. The father had agreed to pay for private pre-kindergarten but wanted the child to attend public school thereafter.
The mother argues that the court should have provided for payment of private school expenses in an amount proportionate to the parties' income based on the child's special needs. The court may order the parents to pay for private school tuition where they have the ability to pay, and such attendance is in the child's best interest, if they agree that the child should attend private school, Levi v. Levi, 780 So.2d 261 (Fla. 3d DCA 2001), such attendance is in their customary standard of living, see Bell v. Bell, 811 So.2d 833 (Fla. 2d DCA 2002); Thomas v. Thomas, 776 So.2d 1092 (Fla. 5th DCA 2001); Crowley v. Crowley, 672 So.2d 597 (Fla. 1st DCA 1996); Luskin v. Luskin, 492 So.2d 783 (Fla. 4th DCA 1986); Kaufman v. Kaufman, 491 So.2d 584 (Fla. 3d DCA 1986), or if the child has a special need that cannot be met by public schools. See Musser v. Watkins, 752 So.2d 141 (Fla. 2d DCA 2000); Matthews v. Matthews, 677 So.2d 323, 327 n. 3 (Fla. 1st DCA 1996); Stefanowitz v. Stefanowitz, 586 So.2d 460 (Fla. 1st DCA 1991); Wilson v. Wilson, 559 So.2d 698 (Fla. 1st DCA 1990). In addition, when the award of such expenses amounts to a deviation from the guidelines in excess of five percent, the court is permitted to make the award based on "extraordinary... educational ... expenses" supported by a specific finding explaining the deviation. § 61.30(11)(a), Fla Stat. (2000)
Here, there was record evidence at the final hearing that the child had special needs that could not be met at a public school. A pre-admission evaluation to a private kindergarten program concluded that the child had significant weaknesses in fine motor skills, visual perceptual abilities, and kinesthetic abilities as well as socialization and emotional issues that could "complicate her ability to smoothly transition to an academic kindergarten environment." Subsequently, she was evaluated by a neurologist who found that her "structured educational environment ... has been very supportive and helped teach her some of these [social communication] skills, has been extremely beneficial to her and will continue to be beneficial to her over time." The neurologist concluded: "I believe that she needs that kind of intervention at the present time and it would be a mistake to take her out of that environment."
As a result of that evaluation, the child began treatment with Dr. Silverman, a psychologist, who testified that the referring neurologist evaluated the child as meeting the diagnostic criteria for Asperger syndrome. Dr. Silverman stated that the child
.... has a history of extremely oppositional behavior, a history of social skills deficits that are very severe, significant difficulty interacting with peers, significant difficulty establishing appropriate relationships, engaging in very inappropriate behavior with strangers, communication difficulties, as well as a very difficult time adhering to limits. [She has a] need for routines. When routines are changed, she has an extremely hard timehard time transitioning, and a lot of aggressive behaviors towards mother, *1167 the peers, and herself; as well as over the course of treatment, serious suicidal ideation[.]
As to school placement, Dr. Silverman testified that she observed the child at her Montessori school, which has smaller classes, and that school is the appropriate placement at this point. She also stated that the child requires small class placement; that her problems are not severe enough to warrant placement in a special class; that it would be hard to imagine that she could function in a regular public school class of 30-35 children; and that she surmised that the child would have severe traumatic events as a result of placement in a large class. The school reports also support the psychologist's conclusion as to the child's need for individualized attention and show that the child is making excellent progress at school. Thus, there was evidence that the child had special needs that a public school would not be able to meet at this time. In addition, it must be noted that the father agreed with the child's initial private school attendance. Dr. Silverman testified that the child would benefit from staying in a familiar environment and not changing schools at this point. Thus, the child's initial placement in private school with the father's consent in conjunction with the psychologist's testimony also shows that the child should continue attendance at her school. Cf. Hine v. Hine, 558 So.2d 496, 499 (Fla. 3d DCA 1990)(father ordered to pay for private school tuition affirmed where parties agreed to enroll learning disabled child at private school and "an expert testified that the child has made tremendous progress while at the private school and that the child should not be removed"). The father did not present any evidence that contradicted the psychologist's testimony. Based on this evidence, we hold that the trial court abused its discretion in denying the request for private school expenses. The trial court should determine this issue based on the parties' ability to pay for private school. See § 61.30(11)(a)1, Fla. Stat. (2000). If the father believes that a requisite change in circumstances has occurred, he may seek modification as to future private school attendance.
Thirdly, we reverse that portion of the judgment ordering the father to pay certain expenses incurred for the child's speech therapy and 1998 Temple Sinai membership and 1998/1999 tuition. The stipulation provides for such payment and the court found this portion of the stipulation enforceable. The judgment, however, provides that the father must pay these expenses "to the extent that they are not paid." It is unclear whether the court is ordering the father to reimburse both the mother for amounts she paid and the providers for the amounts due to them or just ordering the father to pay the providers. On remand, the trial court should order the father to pay the mother any amounts she paid toward these expenses, and to pay Temple Sinai and the speech therapist any amounts that remain unremitted.
Next, we reverse the court's ruling as to the charges for the child's psychological evaluation and treatment expenses. The mother argues that the stipulation requires the father to pay those expenses from the date of the agreement until the final hearing. The judgment states "[a]s to the other expenses that the Stipulation purports to require the [father] to pay in their entirety, such as individual counseling as per paragraph seven, the Court finds that there is no showing by the [mother] of entitlement to be repaid for the bills submitted into evidence under the provisions of the agreement." The mother submitted copies of checks and billing statements reflecting her payment of the *1168 child's expenses for psychological treatment during the period covered by the stipulation. As the court's basis for denying the award is not apparent, on remand, the court should either award the mother the amounts she paid or clarify its reasoning in denying such award.
Next, we reverse the portion of the judgment concerning the uncovered medical expenses. The mother argues that the court ordered each parent to pay 50% of the child's uncovered medical expenses instead of a proportionate amount based on their income. The order provides that the father's basic child-support obligation is $822.69 per month, and that his share of the day care expenses is $118.20 per month for a total of $940.39 (sic) per month. It also states that the latter amount includes uncovered medical expenses. Section 61.30(8), Florida Statutes (2000), provides that the court shall add such expenses to the basic obligation unless these expenses have been ordered to be separately paid on a percentage basis. A review of the child support guidelines worksheet does not confirm the father's contention that uncovered medical expenses are included in the basic child-support amount. On remand, the court shall clarify whether the expenses are included in the basic child-support amount or it shall comply with section 61.30(8), and provide for such award in the same percentage as the parties' income.
Finally, on the cross-appeal, we disagree with the father's contention that the court abused its discretion in admitting the testimony of the accountant. The father and his attorney had ample time to review the short, uncomplicated report as to the parties' lifestyle expenses based on a review of their filed financial statements, expenditures, and bank accounts. See Dos Santos v. Carlson, 806 So.2d 539 (Fla. 3d DCA 2002). The father also contends that he should be able to attack the portion of the stipulation concerning "bridge-the-gap" money on other bases. As the court ruled that this provision was illegal, it did not address other issues. On remand, the court will consider other issues as to this provision that it deems properly raised.
Accordingly, we reverse the portions of the judgment finding the stipulation as to the "bridge-the-gap" provision unenforceable as illegal, and denying an award for private school expenses. We also reverse the court's rulings as to payments for Temple Sinai costs, speech therapy, child psychological evaluation and treatment, and uncovered medical expenses. We affirm the remaining portions of the judgment.
Affirmed, in part, reversed, in part, and remanded with directions.
NOTES
[1] Clearly, any agreement to provide a home for the child is not illegal. See Garcia v. Gonzalez, 654 So.2d 1064, 1066 (Fla. 3d DCA 1995)(providing housing is an aspect of child support).
[2] The court did find that the child needs individual and group psychological therapy for at least a year.